UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PALLTRONICS, INC.,**

                        Plaintiff,

                                        **HONORABLE DENISE PAGE HOOD**

        v.
                                        **No. 22-12854**

**PALIOT SOLUTIONS, INC., etc.,**

                        Defendant.
_____/

**HEARING ON DEFENDANT'S MOTION TO DISMISS**

**Wednesday, April 26, 2023**

Appearances:

On behalf of Plaintiff:          On behalf of Defendant:

Jacob D. Koering                 R. Christopher Cataldo
Miller, Canfield                 Taft, Stettinius & Hollister
227 W. Monroe Street, #3600      27777 Franklin Road, #2500
Chicago, Illinois  60606         Southfield, Michigan  48034
(312) 460-4272                   (248) 351-3000
koering@millercanfield.com       ccataldo@taftlaw.com

Joel C. Bryant
Miller, Canfield
101 North Main Street, 7th Flr
Ann Arbor, Michigan  48104
(734) 663-2445
bryant@millercanfield.com

                        -   -   -

*To obtain a certified transcript, contact:*
*Sheri K. Ward, Official Court Reporter*
*Theodore Levin United States Courthouse*
*(313)234-2604 · sheri_ward@mied.uscourts.gov*

*Transcript produced using machine shorthand and CAT software.*

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

**I N D E X**

Motion Hearing                                                    Page

Argument by Mr. Cataldo  .........................4

Argument by Mr. Koering  ........................14

Argument by Mr. Cataldo  ........................24

Matter taken under advisement by the Court ......27

Certification of Reporter .......................30

-   -   -

**E X H I B I T S**

        Number                                Ofrd Rcvd Vol.

***None Marked, Offered or Received***

-   -   -

*22-12854; Palltronics v. PALIoT Solutions*

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

*Page 3*

1              Detroit, Michigan

2              Wednesday, April 26, 2023

3              5:19 p.m.

4                 -   -   -

5       (Call to Order of the Court.)

6              **THE COURT:**  Okay.  This is going to be Case

7    Number 22-12854, *Palltronics, Inc. v. PALIoT Solutions*.  It's a

8    motion to dismiss, Number 29.

9              **MR. CATALDO:**  Your Honor, for the record,

10   Christopher Cataldo for the defendant, moving party, PALIoT

11   Solutions.

12             **MR. KOERING:**  Good afternoon, Your Honor.

13             **THE COURT:**  All right.  What's your last name again?

14             **MR. CATALDO:**  Cataldo, C-a-t-a-l-d-o.

15             **THE COURT:**  Okay.  Great.  Thank you.

16             **MR. KOERING:**  Good afternoon, Your Honor.

17   Jacob Koering here on behalf of the plaintiff.  I have also got

18   my colleague here as well, Joel Bryant.

19             **THE COURT:**  Okay.  Let me make sure I have both your

20   names down.  Joel Bryant and?

21             **MR. KOERING:**  Jacob Koering, Your Honor, with a K.

22             **THE COURT:**  Okay.  Thank you very much.

23             **MR. KOERING:**  Thank you, Your Honor.

24             **THE COURT:**  This is the defendant's motion to

25   dismiss.

*22-12854; Palltronics v. PALIoT Solutions*

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

*Page 4*

| | |
|---|---|
| 1 | Okay.  This is the defendant's motion, isn't it?  Yes. |
| 2 | **MR. CATALDO:**  Good evening -- afternoon, Your Honor. |
| 3 | I'm Christopher Cataldo, for the record. |
| 4 | **THE COURT:**  Okay. |
| 5 | **MR. CATALDO:**  This is our motion under Federal Rule |
| 6 | of Civil Procedure 12(b)(6) to dismiss for failure to state a |
| 7 | claim.  As the Court knows, the standard is set forth by the |
| 8 | Supreme Court in the *Twombley* case, that the plaintiff must |
| 9 | plead more than labels and conclusions, but they have to set |
| 10 | forth facts that demonstrate that in fact they have causes of |
| 11 | action, and, Your Honor, we believe that they have not done |
| 12 | that for the reasons we're going to discuss and which have been |
| 13 | briefed extensively. |
| 14 | **THE COURT:**  I'm going to give you 15 minutes, and I |
| 15 | would suggest that you save a few minutes for rebuttal, okay? |
| 16 | **MR. CATALDO:**  I understand your point, and I will |
| 17 | abide by it. |
| 18 | **THE COURT:**  Okay. |
| 19 | **MR. CATALDO:**  Count 1, Your Honor, is a declaratory |
| 20 | judgment count based upon the bankruptcy order that |
| 21 | Judge Tucker entered, and as you found in your |
| 22 | February 27th opinion on the injunction, that did not raise a |
| 23 | federal question because this case is not an appeal from that |
| 24 | order.  They have asked you to interpret that order. |
| 25 | And, Your Honor, we submit that that is not appropriate. |

*22-12854; Palltronics v. PALIoT Solutions*

**1**  The Court can't interpret the order of Judge Tucker, as you

**2**  have already said.  You don't have the jurisdiction to do that,

**3**  and therefore, Your Honor, Count 1 fails to state a claim.

**4**      I'm going to leave the issue of the trade secrets, which

**5**  are Counts 2 and 3, to the end and come back to those.

**6**          **THE COURT:**  Okay.

**7**          **MR. CATALDO:**  And address Counts 4 and 5, which

**8**  relate to another order that Judge Tucker entered, which

**9**  relates to this LinkedIn account.

**10**      And if you take a look at the allegations in the complaint

**11**  in Paragraphs 45 to 54, and they attach Judge Tucker's contempt

**12**  order as their Exhibit Number 9, the claim is that Judge Tucker

**13**  has made a finding that there was an improper access to a

**14**  LinkedIn account.  Judge Tucker made a ruling of contempt for

**15**  that.  He is conducting proceedings relating to assessing costs

**16**  and fees relating to that issue, and if you take a look at his

**17**  order, which is Exhibit 9 to the complaint, he says he is

**18**  retaining jurisdiction to enforce and interpret his contempt

**19**  order, which is Exhibit Number 9.

**20**      Therein lies the problem then, that they have brought in

**21**  their Counts 4 and 5 that very issue to this Court, which

**22**  Judge Tucker has said he is retaining jurisdiction on.  Again,

**23**  if we go to those paragraphs in the Complaint that are the

**24**  basis for Counts 4 and 5 relating to this LinkedIn account,

**25**  it's based exclusively on Judge Tucker's findings and his order

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

*Page 6*

1  of contempt, which is Exhibit 9 to the Complaint, and, again,

2  he has jurisdiction over that issue.

3      And so, once again, Your Honor, that's an issue that

4  should go, and Judge Tucker should address and should decide

5  the extent of which sanctions, damages, et cetera, and he is

6  already doing that to some extent, Your Honor.  There are

7  proceedings going on right now where Judge Tucker is making

8  findings about attorney fees relating to this issue over the

9  LinkedIn account.

10     So, Your Honor, our position on Counts 4 and 5, again, is

11 that that should be dismissed and sent back to Judge Tucker to

12 make the determinations with respect to all of those issues

13 where he has retained jurisdiction.

14     Your Honor, Count 6 of the Complaint, and this is

15 really -- if you look at this count, probably more than any

16 other it is just a bare bones series of conclusions without any

17 facts or detail whatsoever, and it purports to allege a cause

18 of action for intentional interference with prospective

19 economic advantages.  And in our brief, Your Honor, we cited

20 the elements of that cause of action, and one of the things

21 that they have to prove is that my client induced or caused the

22 breach or termination of relationships or expectancies through

23 which they thought they were going to be gaining some economic

24 advantage.

25     They don't allege any facts whatsoever that would support

*22-12854; Palltronics v. PALIoT Solutions*

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

*Page 7*

1   that.  They allege in Paragraph 114, Your Honor, that -- not

2   Palltronics, but their predecessor, the other company that they

3   bought the assets from, Lightning, had relationships with

4   venders and companies in the pallet rental space.  They don't

5   say who they are, what they are, what those relationships were.

6   There's no detail whatsoever, just that their predecessor had

7   relationships.

8       Then they claim in Paragraph 115 that when they bought the

9   assets they acquired access to those relationships.  That's the

10  exact wording of that Paragraph 115.  What does that mean?

11  Does that mean they had those relationships?  Those were their

12  same relationships?  They acquired them?  No idea.  There's no

13  facts whatsoever that we could determine what that is.  Again,

14  it does not meet the standard for *Twombley*.

15      Then Paragraph 118.  This is all the detail in this

16  allegation in Count 6.  It says, "PALIoT's misrepresentations

17  have caused and are causing interference with Palltronics'

18  continuation of the PALIoT relationships."

19      It doesn't say the element that they were supposed to

20  meet, which is that we caused a termination or a breach.  It

21  doesn't allege that.  It just says interference.  I have no

22  idea what "interference" means, but the point is, Your Honor,

23  under *Twombley* they have not pled facts that show a cause of

24  action for tortious interference.

25      These are, at most, conclusions.  There is no detail

*22-12854; Palltronics v. PALIoT Solutions*

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

*Page 8*

1  whatsoever on Count 6.  Count 6 is clearly an afterthought that

2  they threw in, something that they are hoping maybe they will

3  find something in discovery that might sustain it, but,

4  Your Honor, in terms of meeting the test that the Supreme Court

5  has laid out for a pleading in federal courts, it doesn't even

6  come close in Count 6.

7      Your Honor, now I'm going to turn to Counts 2 and 3, which

8  deal with -- there's a federal and a state law claim involving

9  trade secrets, and I am mindful of the Court's opinion on the

10  injunction and the findings the Court made, but here we're

11  dealing with a bit of a different animal in that we are dealing

12  with the allegations in the Complaint, not things they put in

13  an affidavit that aren't in the Complaint or things they put

14  in -- documents that are in the Complaint.  We're dealing with

15  what's just in the Complaint.

16      And, Your Honor, respectfully, they did not plead based on

17  what's in the Complaint -- and this is a 12(b)(6) motion so we

18  obviously know we have to accept well-pled allegations of fact,

19  not just conclusions*, Twombley* says.  We have to accept them as

20  true for purposes of this motion, but we're going to be basing

21  it only on what's in the Complaint.

22      And so there are some really significant problems with

23  what they have alleged in the Complaint for the trade secret

24  counts, both in the federal and the state court claims.

25  Count 2 is the federal cause of action.  Count 3 is the state

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

Page 9

1  law cause of action based on trade secrets.

2       So if you -- one of the elements that they have to show is

3  that they took reasonable measures to ensure confidentiality of

4  the items they are claiming to be trade secrets.  That's their

5  burden to show that, and if they don't -- that's because if

6  information gets into the public or they haven't protected it,

7  it's not a trade secret and they lose their rights to it.  They

8  have to have taken reasonable measures, and the case law we

9  have cited on that, it's well known on that issue.

10      If you take a look at what's in the Complaint, what's

11 actually in the Complaint on that issue is nothing but bare

12 bones allegations, Your Honor.  You know, if we take a look

13 at -- we get to what do they actually say about

14 confidentiality, and it's in Paragraphs 35, 36, 37 and 38, and

15 this is the extent of it.  They mention in Paragraph 35 is the

16 first time they talk about one of their supposed trade secrets,

17 which is the sourcing of the wood, okay?  And then there's a

18 sentence that just says, "Debtor treated the sources for

19 identity of the engineered wood as confidential and proprietary

20 information."

21      That's it.  That's the full extent of it.  What does that

22 mean, they "treated" it?  Does it say that they had, you know,

23 confidentiality agreements with every single person that knew

24 about it?  No, it doesn't say that.  Does it say that with

25 respect to outside venders they were subject to confidentiality

*22-12854; Palltronics v. PALIoT Solutions*

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

*Page 10*

1   agreements?  It doesn't say that.  It doesn't say anything.

2   It's just a bare bones conclusion with no detail or support

3   whatsoever.  There is no way from that allegation that I could

4   discern have they really protected it, not based on that

5   allegation.

6        And then take a look at Paragraph 36, and they talk about

7   their polymer Exobond.  They don't really say anything other

8   than -- they identify that they have this brand name Exobond.

9   Then they go into Paragraph 37, which talks about their

10   inventions for methods of assembly, et cetera, et cetera, and

11   then there is one sentence at the end:  "Debtor treated these

12   methods, the associated coding, and the equipment structure and

13   sourcing as confidential and proprietary..."

14        That's it.  That's the full extent of what they have

15   alleged about that issue.  Now, we know from the injunction

16   that every single one of the items in Paragraph 37 were in fact

17   created by third-party vendors, and that's not in the -- that's

18   in the Complaint in later paragraphs, like if you look at

19   Paragraph 63 they reference that, but they don't say, for

20   example, that these third-party venders were subject to any

21   kind of confidentiality agreements.

22        You know, we know, for example, that the company that did

23   the spray system, they did the spray systems for GM, for

24   Toyota, for Chrysler.  That's what they do.  They sell these

25   spray systems.  There's nothing confidential or proprietary

*22-12854; Palltronics v. PALIoT Solutions*

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

Page 11

1   about them.

2        So the fact that debtor treated these methods, codings and

3   equipment structures as confidential, that doesn't establish

4   anything.  They have no facts in this Complaint that show that

5   any of this is confidential or proprietary, which means it

6   can't be a trade secret.

7        The same thing if we go to Paragraph 38.  They talk about

8   this tracking device.  Okay.  Same thing.  They have

9   one sentence.  They treated this as confidential and

10  proprietary.  Completely conclusion, no facts, nothing,

11  Your Honor.  That is not sufficient under *Twombley*.

12        This does not state a claim for either -- under state law

13  or federal law for trade secret misappropriation.  They have

14  not established that they took reasonable measures to ensure

15  confidentiality.

16        One more point about this, and that is the most -- I think

17  one of the most important points is they have not alleged

18  misappropriation.  There are no facts that would show that my

19  client did anything wrong with respect to gaining access to

20  these claimed trade secrets.  We have denied completely that we

21  have ever used any of their trade secrets in any way, shape or

22  form, 100 percent, but that's not before the Court today.  But

23  I just want to say that unequivocally.  We have never used

24  their trade secrets.

25        When you look at the Complaint in terms of what facts do

1   they plead, and other than sort of the general conclusion that,

2   well, gee, your people -- you hired employees of -- former

3   employees of Lightning, they knew about these supposed trade

4   secrets, that's not misappropriation, Your Honor, and I point

5   the Court to a decision of another judge on the bench here,

6   Judge Parker, and it was attached as Exhibit 1 to our motion

7   because she had virtually the identical issue in front of her.

8        And it's at Tab 1 to our motion, Your Honor, and if you

9   look on Page 5, she addresses this very issue and -- basically

10  saying that the defendant's knowledge of the plaintiff's trade

11  secrets and the fact that the defendants hired the plaintiff's

12  former employees at their company and the fact that they knew

13  about the trade secrets, that's not misappropriation, and she

14  said that -- and dismissed the claim, Your Honor, and that's,

15  you know, 2009 West Law 1856222, *MSC Software v. Altair*, and,

16  again, that's attached as Exhibit 1.

17       And that's the gist of their misappropriation claim,

18  Your Honor, is that, gee, you hired our former employees that

19  supposedly knew about our trade secrets. Therefore, you have

20  misappropriated them.

21       The only other items that they have in the Complaint about

22  that are all, quote-unquote, on information and belief. If you

23  look at Paragraph 63, they say, "Upon information and belief,

24  PALIoT engaged the same company used by Debtor to build

25  machinery..."

1    That's not misappropriation.  These are -- again, these

2  are companies, like AUSI, the paint system, they sell paint

3  systems.  That's what they do.  Their whole business is selling

4  these to anybody that wants to buy a paint system, whether it's

5  GM, Ford, Chrysler, PALIoT, Palltronics.  You or me, if we pay

6  them enough money, we can go buy a paint system from them,

7  Your Honor.  There's nothing proprietary about that.  That's

8  not misappropriation.

9    Or to say that we engaged the same company they used to

10  source polymers.  Again, there are companies out there that

11  make polymers and sell the polymers.  You can go to Home Depot

12  and buy these polymers for woods.  They are made by many

13  different companies.  It's the fact that we, according to them,

14  use the same company.  That's not misappropriation of anything,

15  Your Honor.

16    And then there's one other allegation in the Complaint.

17  In Paragraph 65 they say -- I apologize.  It wasn't

18  Paragraph 65.  It's the -- the allegation -- it's 58.  "Upon

19  information and belief, employees of Lightning that are now

20  working for PALIoT downloaded information about the Lightning

21  Pallet assembly and spraying process on their laptops while

22  they were working for Lightning ..."

23    Not while they were working for us, okay?  And that's the

24  allegation, is that while they were worked at Lightning they

25  were accessing Lightning's information.  It doesn't say they

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

*Page 14*

1  didn't have access to it or that it was improper for them to do

2  that.  It doesn't say they then transferred that information to

3  PALIoT.  It doesn't say any of that, Your Honor.  Those

4  allegations aren't in the Complaint.  It just says that the

5  Lightning employees when they were working for Lightning were

6  looking at Lightning's information.

7      Your Honor, respectfully, so what?  Was that part of their

8  job?  It doesn't say, but, again, it's got to be in the

9  Complaint.  The *Twombley* factors say they have to put these

10  allegations in the Complaint and plead them, Your Honor, and

11  for all these reasons, and the reasons we have laid out in our

12  brief -- I think I'm at my 15 minutes -- I want to save a very

13  short rebuttal -- we ask the Court to grant the motion.

14      **THE COURT:**  All right.  Thank you.

15      **MR. KOERING:**  Good evening, Your Honor.

16      **THE COURT:**  Good evening.

17      **MR. KOERING:**  Thank you very much for your

18  flexibility today to let me come here and argue after a very

19  full day for you.  I, too, will try and keep this brief and to

20  the point.

21      **THE COURT:**  You have the same amount of time.

22      **MR. KOERING:**  I'm sorry?

23      **THE COURT:**  You have the same amount of time.

24      **MR. KOERING:**  Thank you, Your Honor.

25      I think it's important to put this motion in context,

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

*Page 15*

1   Your Honor.  This is a 12(b)(6) motion.  It is not a motion for

2   summary judgment.

3       The purpose of a motion for -- a motion to dismiss is to

4   assess the statements in the Complaint to see about the --

5   whether or not sufficient notice of the claims were given under

6   Rule 8.  While this motion here was filed on time, it was filed

7   after two separate motions for preliminary injunction were

8   fully briefed and after this Court had an hour-long-plus oral

9   argument with the parties.  That's 100-plus pages of briefing,

10  seven declarations with detailed testimony in each.

11      I would note that we, in Footnote 2 of our response on the

12  motion to dismiss, we cite some case law that shows you that

13  you can reference those additional documents as part of your

14  assessment of whether or not we have stated a claim here.

15      I think it's -- it sort of strains credulity at this point

16  in time for defendant to say they don't understand the claim

17  that's being asserted against them.  This is a 120-page

18  Complaint with detailed allegations -- or a 120-paragraph

19  Complaint with detailed allegations in there.

20      It's also notable that Your Honor granted the motion for a

21  preliminary injunction, finding, for Counts 2 and 3, that there

22  was not just a plausible claim but that those allegations were

23  likely to be successful.

24      We think under the law or the case doctrine, Your Honor,

25  that's dispositive of those two issues with respect to a motion

*22-12854; Palltronics v. PALIoT Solutions*

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

Page 16

1    to dismiss.  Obviously we didn't have an opportunity to comment

2    on that issue in briefing, but we do think that that is

3    dispositive here.

4         That being said, we are here on a motion to dismiss, and I

5    think it's important to focus on what the standard is here that

6    the Court needs to use to assess the allegations in the

7    Complaint.

8         Your Honor has to accept all well-pled facts as true, and

9    you have to draw reasonable inferences in the non-movant favor

10   here, which is us.  Given those two requirements, then you have

11   to assess whether or not there is a reasonable inference that

12   the defendant here engaged in the wrongful conduct that was

13   alleged.  It's not, as they say -- it's not an opportunity for

14   the defendant to just point to allegations and say those are

15   conclusory and then dismiss them.  It's whether or not you look

16   at those allegations and they lead to a reasonable inference of

17   wrongdoing.

18        This is not a motion for summary judgment.  I heard

19   counsel say that we haven't established our claim here.  We

20   haven't proven our arguments.  Those, Your Honor, with respect,

21   are for a different motion at a different time.  While we

22   believe ultimately we will be successful in this case, I'm

23   focusing on the motion that's in front of this Court, which is

24   a motion to dismiss.

25        So I think if you pay careful attention to the defendant's

*22-12854; Palltronics v. PALIoT Solutions*

1  arguments, while they raise a lot of issues claiming that there

2  are conclusory allegations, they haven't addressed the

3  substantive allegations in the Complaint directly much at all

4  especially in the papers that were submitted to the Court.

5  Instead, they are arguing again and again they think they are

6  right and that we're wrong.  That's not the standard that's

7  before the Court.

8      So what is pled in the Complaint?  Well, I think if you

9  look at the Complaint plaintiff's claim here is pretty

10  straightforward.  We have pled facts showing that the plaintiff

11  owns trade secrets.  They purchased them through the bankruptcy

12  sale process from Lightning Technologies, and there are

13  detailed allegations in Paragraphs 27 through 32 about the sale

14  order and the items that were purchased through that and

15  Paragraphs 33 through 41 detailing specifically certain

16  specific inventions that were identified that are key to this

17  case.

18      We have also specifically identified that all of these are

19  trade secrets.  Paragraph 83 of the Complaint identifies that,

20  and they are referred to throughout the Complaint as trade

21  secret information.

22      We have pled that the information was confidential in

23  Paragraphs 33, 37, 38, 39, 83 and 92.  Now, counsel says those

24  are conclusory allegations.  I think counsel is confusing the

25  difference between a straightforward articulation of a position

1    and a conclusory allegation.  Here, saying that they were

2    maintained as confidential is a factual statement.

3         This information is valuable, according to Palltronics

4    here.  We plead that again in Paragraphs 27, 40, 83, 93, and

5    94.

6         And then we pled that this confidential valuable

7    information was used in making a pallet, the Lightning pallet,

8    which we describe again in Paragraphs 33 to 41.

9         We describe that the defendant had access to that

10   information through former employees of Lightning and through

11   the bankruptcy process in Paragraphs 56 to 58.

12        We pled specific conduct about downloading computer code

13   in Paragraph 58.  That is a concerning issue because we also

14   plead that defendant Lightning hired these ex-Lightning

15   employees because they wanted to obtain this information, which

16   we say in Paragraph 73.

17        We pled that the defendant here has a knockoff pallet, a

18   pallet that is not just similar, but nearly identical to the

19   pallet that was created using the trade secret information at

20   Lightning.  We plead that comparison information in

21   Paragraphs 70 to 76.

22        And then we tie these allegations to the short time it

23   took defendant to start advertising its pallet after

24   foundation.  That's in Paragraphs 71 to 72 and 76.

25        We made specific allegations, again, that the ex-Lightning

1  employees were hired to obtain this information.  That's in

2  Paragraph 73.

3      And we made further allegations that defendant is

4  marketing its products to the same customers, same venders, and

5  same relationships as Lightning, Paragraphs 75 to 76.

6      And then we have also pled a number of allegations about

7  how defendant violated the sale order and used assets to usurp

8  Lightning's LinkedIn page in Paragraphs 42 through 54.

9      Now, these detailed allegations lay out a simple claim.

10  Palltronics has purchased trade secrets.  They -- in a

11  bankruptcy process.  PALIoT had an opportunity to purchase

12  those trade secrets.  They chose not to.  Instead, they hired

13  ex-Lightning employees to take that information from them and

14  build a nearly identical pallet -- or an identical pallet

15  within a very short period of time.

16      All of that leads to the reasonable conclusion, if not the

17  more likely conclusion, that they used the information from

18  these employees, this confidential information that was

19  maintained as confidential at Lightning using agreements and

20  otherwise, to build this competing pallet product.

21      During pleading we identified all of these paragraphs in

22  our response to the motion.  They were not addressed in

23  pleading so there wasn't any allegation in the reply that

24  identified why these allegations were somehow insufficient.  We

25  believe that, therefore, Your Honor, these allegations by

1  themselves are dispositive of the issues here.  They identify

2  all of the elements needed to plead Counts 1 through 6 as they

3  are asserted in the Complaint.

4        Now, I want to address a couple of the issues that counsel

5  raised.  He raised for the first time in this oral argument

6  here his position that there's a federal question issue with

7  respect to Count 1.  Now, we believe, Your Honor, there isn't a

8  federal question issue, and while there was -- we understand

9  that Your Honor made a finding in your preliminary injunction

10 order with respect to that.  That's not an issue that we have

11 briefed or raised before the Court.

12       We're happy to address that issue in briefing if we need

13 to, but the original argument on Count 1 was all an argument

14 that we failed to plead sufficient facts.  It's notable that

15 they haven't raised that here, and we think, as we have shown,

16 we have identified there were assets that were purchased as a

17 part of the bankruptcy process, and we have alleged that they

18 were put into a pallet by Lightning and that the defendant here

19 took that information and used it to build its own pallet,

20 which we believe demonstrates a violation of Count 1.

21       Again, those are pleadings in the case, and if the Court

22 is interested in addressing the federal question issue, we're

23 happy to address it through supplemental briefing if that would

24 be helpful.

25       I'll go in the order that counsel did just so that it

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

Page 21

1    makes sense in terms of the flow of the argument.

2        The second issue that counsel raised was Counts 4 and 5,

3    which addressed the Computer Fraud and Abuse Act and unfair

4    competition claims that are asserted in the Complaint.

5        Now, counsel -- again, this wasn't an argument that was

6    raised with any case law or citation in the briefing, but

7    counsel has now argued that this is an issue that should be

8    returned back to the bankruptcy court because of -- Exhibit 9

9    to the Complaint says it's retaining jurisdiction.

10       What counsel doesn't address to the Court is that there

11   was a subsequent order from the Court.  The original order

12   finding contempt was a part of the core bankruptcy proceeding,

13   but there was an adversarial proceeding that we filed in the

14   bankruptcy court.  In that adversarial proceeding we raised

15   this exact claim -- these exact claims for the bankruptcy court

16   to consider.

17       The bankruptcy court dismissed the Complaint without

18   prejudice and said these -- I'm not raising any issues -- or

19   I'm not deciding any issues with respect to damages or with

20   respect to injunctive relief, and I think, Your Honor, the

21   order -- or the decision declining jurisdiction can be found at

22   ECF 23, Exhibit 10.

23       Because that case was dismissed without prejudice, the

24   original argument that was raised by defendant with respect to

25   these counts was that there was claim preclusion in the case.

*22-12854; Palltronics v. PALIoT Solutions*

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

*Page 22*

1   As Your Honor knows, for claim preclusion to apply, there must

2   be a final judgment with prejudice.  There is no final judgment

3   with prejudice that addresses those particular issues.  As a

4   matter of fact, as we noted, the bankruptcy court reserved the

5   issues of damages and for injunction for a later time, and,

6   Your Honor, this case is that later time.

7       For -- let me turn to the trade secret counts.  Again, as

8   we noted, Your Honor, and as is seen in Footnote 2 of our

9   response to this briefing, Your Honor can consider additional

10  information on the record that Your Honor already considered

11  with respect to the preliminary injunction hearing that found

12  that there was not just a well-pled claim here, but that it was

13  likely to be successful on the merits.

14      The one -- and, as we have laid out, Your Honor, I think

15  there are plenty of facts.  This 120-paragraph Complaint

16  details very specific facts here about not just that there was

17  a trade secret but how it was misappropriated based on the

18  allegations in the Complaint.

19      I did note that counsel pointed to the MSC Software case.

20  This is the first case that was cited in their motion with

21  respect to the standard of pleading in trade secret cases, and

22  as I seem to concede in the reply, the proper standard with

23  respect to pleading in a, in a pleading case for trade secret

24  misappropriation is *Ajuba International v. Saharia*.  This is

25  871 F.Supp.2d 671.  And what that case says is that the purpose

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

*Page 23*

1    of a pleading in a trade secret case -- trade secret cases do

2    not require pleading with specificity of every single element

3    of the claim, of the trade secret, and that makes sense in a

4    trade secret case since doing so would risk potentially

5    revealing the trade secret to the world.

6        So, instead, what the Court in the *Ajuba* case said is that

7    you need to provide notice of your claim.  That's the

8    allegation, not that you need to provide detailed information

9    about the trade secret itself in the Complaint.

10       What's telling about that MSC Software case is not just

11   that it doesn't apply the right standard, it's that it's a

12   completely irrelevant case, Your Honor.  That case deals with

13   the dismissal of a single paragraph of a longer Complaint that

14   alleged what is called inevitable discovery or inevitable

15   disclosure.

16       This is a situation where a set of employees leaves a --

17   or a key employee leaves a company.  They go to a

18   second company and they say -- the first company says we are

19   concerned that the person who has left our company and is going

20   to the new company is inevitably going to use the trade secret

21   information that they took with them.

22       That is not the allegation in this case.  The allegation

23   in this case is that these Lightning employees did leave with

24   the information, did disclose it, and did use it.  So this is

25   not an inevitable disclosure case so the MSC Software case is

*22-12854; Palltronics v. PALIoT Solutions*

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

*Page 24*

1    not applicable here.  So, instead, it's the *Ajuba* case I think

2    that -- or the *Ajuba* case outlines the appropriate standard to

3    be considered here.

4        We believe, Your Honor, if you take a look at the portions

5    of the Complaint that we have identified there is more than

6    sufficient disclosure at the pleading stage to state a claim.

7    This is not, again, a summary judgment motion.  We don't need

8    to prove our claims, and with all respect to counsel, he hasn't

9    identified any case law or authority that says we need to do

10   the detailed allegations that he's complaining of or asking for

11   in this Complaint.

12       Instead, if you look at the *Ajuba* case, the question is

13   have we put them on notice of our claims, and both with the

14   detailed Complaint that we provided and, again, the over

15   100 pages of briefing and multiple submissions on preliminary

16   injunction, we think the defendant here has more than been put

17   on notice.  Therefore, Your Honor, we ask you to deny this

18   motion and move forward with the case.

19           **THE COURT:**  Okay.  Thank you.

20       You can have a very, very short rebuttal.

21           **MR. CATALDO:**  I'll be brief, Your Honor.

22           **THE COURT:**  I guess it's actually a reply.

23           **MR. CATALDO:**  I'm sorry?

24           **THE COURT:**  I guess it's actually a reply.

25           **MR. CATALDO:**  Yes.  Counsel didn't address Count 6,

*22-12854; Palltronics v. PALIoT Solutions*

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

*Page 25*

1   and I don't think there's really even a dispute that that

2   should be dismissed.

3       With respect to counsel's argument that they don't have to

4   do anything to put you on more than just notice, that's not

5   what *Twombley* says, Your Honor.  I think that's true in state

6   court, but it's not true in federal court anymore since the

7   *Twombley* case.  You have to plead facts, and they haven't pled

8   them, Your Honor.

9       And if we're going to get into the issues of what was set

10  forth in the injunction issue with respect to, for example,

11  this whole misappropriation issue, Paragraph 58, the

12  two gentlemen who were claimed to have downloaded information

13  while they worked at Lightning vehemently denied it, and,

14  again, there was no evidence that they ever took that

15  information from Lightning and ever gave it to anyone at

16  PALIoT, and that has not been pled or established anywhere,

17  Your Honor.

18      The only thing that they claimed was the conclusory

19  allegation that said, gee, you must have done something for you

20  to have done it so quickly, but ignoring the fact that my

21  client spent $25 million of their own money to independently

22  develop this, this -- their pallet, and respectfully, we asked

23  for an evidentiary hearing to be able to show that to the

24  Court, that we did this independently and didn't do it -- use

25  any of their supposed trade secrets, Your Honor, and we still

1   say we haven't used any of their trade secrets.

2          So, Your Honor, I'm not going to repeat the arguments I

3   have already raised.  I do want to raise one more thing -- I

4   know time is short -- which is that in your

5   February 27th injunction order you ordered them to post a bond

6   of $100,000.

7          In our motion -- there is a motion pending -- it wasn't

8   scheduled to be heard today -- it's Number 35 on your docket --

9   where we asked for a number of items in terms of relief, one of

10  which is that the Court has to increase that bond amount

11  because my client has already suffered a $1.8 million loss

12  because of, we say, being wrongfully enjoined.

13         Your Honor, I know that's not up today, but I note that I

14  have not seen anything on the docket showing that a bond has

15  been posted.  Counsel has advised me that they submitted a

16  surety bond to the court.  I was not copied on that, I have

17  never seen it, and just in the hallway he told me who the

18  surety was.  I have no idea if they are a valid surety or not.

19  We would object to a surety bond.  We would want a cash bond.

20         But even the $100,000 bond, which we say is woefully

21  inadequate, hasn't been posted, Your Honor, and that is an

22  issue that needs to be addressed, how we are going to move

23  forward with that, and the whole point of my motion that's

24  Number 35 on the docket, which is, Your Honor, we would like to

25  have an evidentiary hearing on that issue at least to show the

1  potential harm that we are going to suffer for being wrongfully

2  enjoined, as we contend we have been because we have not used

3  any of their trade secrets and don't have plans on using any of

4  their trade secrets.

5      But the fact is, as we lay out in that motion, because of

6  the way they have phrased this, it's so general and vague.  You

7  know, you can't use whatever is in that sale order.  Well, what

8  does that mean?  Our prospective lenders are skittish because

9  they have no idea what that really entails and means and what

10  are all the implications of it because it's so vague.  And, as

11  the Court probably knows, lenders don't like risk, and it

12  creates risk, and that puts us now in jeopardy.  We have

13  already had to lay off people because of this.

14      And so, Your Honor, I would ask the Court, we do need to

15  address the bond issue, and I would ask the Court to please

16  schedule a hearing on Number 35 on your docket.

17          **THE COURT:**  Okay.  All right.  Thank you.

18      Okay.  Thank you for your arguments, and I'm going to take

19  your matter under advisement, and I will get an order out to

20  you and I'll also look at Number 35 to see what needs to be

21  done with it.  Okay?

22          **MR. CATALDO:**  Thank you, Your Honor.

23          **MR. KOERING:**  Your Honor, if I could address the -- I

24  know it's late.  I have information that he doesn't have with

25  respect to the bond, and actually we could use something from

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

*Page 28*

1    the Court, if it would be okay.

2         We have submitted a surety bond to the clerk.  The clerk

3    has informed us that the -- because the preliminary injunction

4    motion isn't clear as to the form of the bond that's to be

5    submitted, they were not sure whether or not they could accept

6    the surety bond, and so they have --

7         And, just so you know, the surety bond comes from

8    Cincinnati Insurance Company.  It's a well-known billion-dollar

9    insurance company.

10        But if Your Honor would be willing to issue an order

11   clarifying that a surety bond is acceptable, we could submit it

12   to the Court.  If it has to be a cash bond, we can -- my client

13   can submit that within one week, but --

14             **THE COURT:**  So no bond has been posted?

15             **MR. KOERING:**  We have submitted a bond, but we have

16   been told now they can't accept it because of the --

17             **THE COURT:**  So it's not posted?

18             **MR. KOERING:**  It's not posted, Your Honor.

19             **MR. CATALDO:**  It's not posted.

20             **THE COURT:**  Okay.  Who in the clerk's office told you

21   that; do you remember?

22             **MR. KOERING:**  We can get a name, Your Honor, if you

23   give us just a minute.

24             **THE COURT:**  Okay.  You don't have to.  We'll find it

25   out, okay?

*22-12854; Palltronics v. PALIoT Solutions*

1      **MR. KOERING:**  Thank you, Your Honor.

2      **MR. CATALDO:**  Your Honor, for the record, we object

3  to a surety bond.  I don't know if the Court wants to take a

4  motion or briefs on that issue.  I have not been provided a

5  copy of whatever was submitted to the clerk.  This was

6  submitted ex parte, and we were not given it so this is the

7  first I'm hearing about a surety bond.

8      **THE COURT:**  Okay.  So why don't you, whatever

9  information you have about your surety bond, submit it to the

10  other side in the event that they are agreeable to it.  They

11  may not be, as they say here today, but perhaps upon looking at

12  it they might feel differently, but if they haven't had a

13  chance to see it, they can't do anything but object to it.

14  Okay?

15      **MR. KOERING:**  Yes, Your Honor.

16      **THE COURT:**  Can you do that in the interim?

17      **MR. KOERING:**  I can hand it to him right now,

18  Your Honor.

19      **MR. CATALDO:**  Thank you, Your Honor.  I appreciate

20  it.

21      **MR. KOERING:**  And, for your information, the person

22  that we spoke with at the clerk's office was Cindy Romak.

23      **THE COURT:**  Okay.  Thank you.

24      **MR. KOERING:**  Thank you, Your Honor.

25      **THE COURT:**  Okay.  Thank you for waiting around to

*Hearing on Defendant's Motion to Dismiss*
*Wednesday, April 26, 2023*

*Page 30*

1  make your arguments, and I will get this out to you in due

2  order.  Okay?

3          **MR. KOERING:**  Thank you, Your Honor.

4          **MR. CATALDO:**  Thank you, Your Honor.

5          **THE COURT:**  Have a good evening, and travel safely.

6          **MR. KOERING:**  Thanks again for your flexibility.

7          **THE COURT:**  Court is in recess.

8      (Proceedings concluded at 6:03 a.m.)

9                      -   -   -

10            **C E R T I F I C A T I O N**

11      I certify that the foregoing is a correct transcription of

12  the record of proceedings in the above-entitled matter.

13

14  s/ Sheri K. Ward                    5/26/2023
    Sheri K. Ward                       Date
15  Official Court Reporter

16                      -   -   -

17

18

19

20

21

22

23

24

25

*22-12854; Palltronics v. PALIoT Solutions*