## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Palltronics, Inc.,

      Plaintiff,                       Case No. 22-12854

v.                                    Hon. Denise Page Hood

PALIoT Solutions, Inc.,
f/k/a PALIoT Solutions, LLC,

      Defendant.
_____

### PALIOT'S MOTION TO COMPEL DISCOVERY RESPONSES
### FROM PLAINTIFF PALLTRONICS, INC.

Defendant, PALIoT Solutions, Inc., through its undersigned counsel, moves this Court pursuant to Federal Rules of Civil Procedure 33, 34, 37 and Local Rules 7.1, 37.1, and 37.2, for an order compelling Plaintiff Palltronics, Inc. to provide full and complete responses to PALIoT's first set of discovery requests served on October 2, 2024 (the "Discovery Requests").

Pursuant to Fed. R. Civ. P. 37(a)(1) and E.D. Mich. L.R. 7.1, counsel for PALIoT and Plaintiff have conferred regarding the many clear and ongoing deficiencies in Plaintiff's responses to the Discovery Requests. Plaintiff has refused to concur in the relief sought herein.

WHEREFORE, PALIoT respectfully requests the entry of an order requiring Plaintiff to respond in full to each of the Discovery Requests and granting any other relief in PALIoT's favor that this Court deems just and proper.

Respectfully Submitted,

/s/ R. Christopher Cataldo
R. Christopher Cataldo (P39353)
Taft Stettinius & Hollister, LLP
Attorneys for PALIoT
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
Dated: January 30, 2025          (248) 351-3000
ccataldo@taftlaw.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Palltronics, Inc.,

      Plaintiff,                              Case No. 22-12854

v.                                       Hon. Denise Page Hood

PALIoT Solutions, Inc.,
f/k/a PALIoT Solutions, LLC,

      Defendant.

_____

**BRIEF IN SUPPORT OF PALIOT'S MOTION TO COMPEL**
**<u>DISCOVERY RESPONSES FROM PLAINTIFF PALLTRONICS, INC.</u>**

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED ................................................................ ii

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND ........................................................................................3

I.    Events Preceding This Lawsuit. ....................................................................3

II.   The Preliminary Injunction.............................................................................4

III.  PALIoT's *Prior* Discovery Requests to Plaintiff. .........................................6

ARGUMENT ...............................................................................................................8

IV.  Plaintiff's Interrogatory Responses are Incomplete and Evasive, and Plaintiff Should be Compelled to Respond to them in Full. .........................9

V.   Plaintiff Should be Compelled to Provide all Documents Responsive to the RFPs.................................................................................................16

CONCLUSION ..........................................................................................................19

171028920v2

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Should Plaintiff be compelled to produce all documents responsive to PALIoT's Requests for Production of Documents?

**PALIoT's answer: Yes.**

2.       Should Plaintiff be compelled to provide sufficient and complete responses to PLAIoT's Interrogatories?

**PALIoT's answer: Yes.**

171028920v2

# CONTROLLING OR MOST APPROPRIATE AUTHORITY
## IN SUPPORT OF PALIOT'S MOTION

**Page(s)**

## Cases

*Broad-Ocean Techs., LLC v. Lei*,
    649 F. Supp. 3d 584 (E.D. Mich. 2023) ...................................................1, 15, 18

*Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*,
    53 F.4th 368 (6th Cir. 2022) .................................................................................12

*DIRECTV, Inc. v. Puccinelli*,
    224 F.R.D. 677 (D. Kan. 2004) ...........................................................................17

*Dura Global Technologies, Inc. v. Magna Donnelly*,
    2007 WL 4303294 (ED Mich 2007).....................................................1, 3, 12, 13

*IDX Sys. Corp. v. Epic Sys. Corp.*,
    285 F.3d 581 (7th Cir. 2002) ...............................................................................12

*In re: Lightning Technologies, Inc.*,
    Bankr. E.D. Mich., ECF No. 1-5, PageID.1-44.....................................................4

*Miller v. Joaquin*,
    431 F. Supp. 3d 906 (E.D. Mich. 2019) ...............................................................9

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)...............................................................................................8

*Radiant Glob. Logistics, Inc. v. Furstenau*,
    368 F. Supp. 3d 1112 (E.D. Mich. 2019) .............................................................1

*Siser N. Am., Inc. v. Herika G. Inc.*,
    325 F.R.D. 200 (E.D. Mich. 2018) (Stafford, J.)............................................9, 16

## Rules

Fed. R. Civ. P. 33 ...........................................................................................7, 8, 11

Fed. R. Civ. P. 34(b)(1)(C) ....................................................................................17

171028920v2

Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv) ....................................................................8

Fed. R. Civ. P. 37(a)(4) ........................................................................8, 9, 16

Rule 34 .........................................................................................................8

**Statutes**

MCLA § 445.1902(d) ....................................................................1, 15, 18

iv

# INTRODUCTION

This case involves claims by Plaintiff based on non-existent "trade secrets" regarding what are known as "smart pallets." Defendant PALIoT has never, at any time, misappropriated or used any trade secrets or "Assets" (as properly defined) of Plaintiff's predecessor, Lightning Technologies, Inc. ("Lightning").[1]  PALIoT has now spent in excess of $35 million to develop its own smart pallet technology and has refuted every shred of conclusory "evidence" Plaintiff has thus far asserted to support its case, which at this point is a vehicle to harass a legitimate competitor.  As of today, some 4 years after Lightning went bankrupt, neither PALIoT nor Palltronics have launched their respective smart pallet.

---

[1] To show misappropriation, a plaintiff must establish that the information actually constitutes a trade secret. *Broad-Ocean Techs., LLC v. Lei*, 649 F. Supp. 3d 584, 591 (E.D. Mich. 2023). Plaintiff must also show that PALIoT acquired the "trade secret" improperly and made unauthorized use of it. *Id.* A "trade secret" "includes a formula, pattern, compilation, program, device, method, technique, or process that (i) derives independent economic value from not being generally known or ascertainable by proper means and (ii) is the subject of reasonable efforts to maintain secrecy. *Id.* (MCLA § 445.1902(d)). To "be a trade secret, the information must, of necessity, be a secret." *Radiant Glob. Logistics, Inc. v. Furstenau*, 368 F. Supp. 3d 1112, 1125 (E.D. Mich. 2019). "Trade secrets do not 'encompass information which is readily ascertainable, i.e., capable of being acquired by competitors or the general public without undue difficulty [or] hardship.'" *Id.* (quoting *Dura Global*, 662 F.Supp.2d at 859). "The identification of alleged trade secrets is important because 'the general knowledge of an employee does not constitute a trade secret.'" *Id.*

Part of the evidence PALIoT tendered includes the declaration of the former President of Lightning, Jeffrey Owen, which confirmed that Lightning had no "trade secrets" and that the "Assets" Lightning sold to Plaintiff were physical, not intellectual property. ECF 20-1. For this reason, more than 2 years after this case was filed, Plaintiff continues to evade disclosure of what it claims are its "trade secrets", any evidence showing that PALIoT is actually using these claimed "trade secrets", or any evidence that PALIoT committed misappropriation.

To flush out these critical facts, on October 2, 2024, PALIoT served Plaintiff with detailed interrogatories and document requests well within the scope of this action and the confines of the Federal Rules of Civil Procedure *before* Plaintiff had served its own discovery requests.  Likely because it does not have any trade secrets, let alone evidence of actual use or misappropriation by PALIoT, Plaintiff responded with vague and general assertions regarding items which are common to every pallet in the industry and which do not disclose any trade secrets, let alone evidence of improper use or misappropriation.

On November 7, 2024, PALIoT provided written notice to Plaintiff of its insufficient response. To date, Plaintiff has not adequately supplemented its responses to the Discovery Requests.

The plaintiff in a trade secrets case is obligated to make a detailed disclosure of its claimed trade secrets and supporting evidence of use and misappropriation.

*Dura Global Technologies, Inc. v. Magna Donnelly*, 2007 WL 4303294 (E.D. Mich 2007) (All unpublished cases are attached at Ex. D). No such disclosure has occurred.

To avoid even further delay of discovery in this case, PALIoT has no option but to seek the instant relief from this Court. PALIoT seeks entry of an order compelling disclosure of information and documents responsive to the Discovery Requests.

## FACTUAL BACKGROUND

### I.  Events Preceding This Lawsuit.

Lightning was founded in 2015 to develop  a "smart pallet", a type of pallet featuring track-and-trace technology for monitoring location, temperature, weight, and movement. Smart pallets have been available in the market since at least 2016.

Lightning never brought a smart pallet to market. On February 5, 2021, Lightning filed bankruptcy. Several former Lightning employees were recruited by PALIoT, a new company, almost a year after they had stopped working at Lightning. At that time, PALIoT had an investor, founder and existing employees with decades of experience in the pallet, asset tracking and asset pooling industries.

Pursuant to an Purchase Agreement dated March 16, 2021 ("APA"), Plaintiff purchased the assets of Lightning for $5 million. ECF No. 1-3, PageID.181-213. On

3

May 13, 2021, the bankruptcy court entered its sale order (the "Sale Order"). *In re: Lightning Technologies, Inc.,* Bankr. E.D. Mich., ECF No. 1-5, PageID.1-44.

Under the APA, Plaintiff acquired assets including furniture, fixtures, equipment, and inventory. ECF No. 1-4, PageID. 355-359. The APA also conveyed to Plaintiff Lightning's ***"right, title and interest"*** in the "Intellectual Property" listed in Schedule 2.1.4, which included a general list of categories of information. ECF No. 1-4, PageID.338, 361-362.

## II.   The Preliminary Injunction.

This case was initially filed as an adversary proceeding in the Lightning bankruptcy, but then dismissed. Plaintiff filed suit in this Court on November 23, 2022, alleging trade secret misappropriation, among other claims, based on PALIoT's alleged wrongful use of intellectual property that Plaintiff claimed under the APA. ECF No. 1. Plaintiff also filed a motion to enjoin PALIoT from using Plaintiff's alleged trade secrets. ECF No. 8.  The motion was not filed under seal and claimed only that certain general categories of information were "trade secrets."

Plaintiff did not present any direct evidence of "misappropriation" or use of protected Lightning pallet technology. Plaintiff relied on the inference that PALIoT, having hired employees who once worked for Lightning, could not have gotten where it was in the development of its own pallet without using Plaintiff's trade secrets. ECF No. 8, at PageID.622.

4

PALIoT filed its response on December 12, 2022. ECF No. 20. PALIoT argued that Plaintiff failed to identify the existence of any actual trade secret, that no misappropriation occurred, and denied that PALIoT was using anything constituting a trade secret of Plaintiff. PALIoT requested an evidentiary hearing to prove its defenses but that request was not granted.

On February 27, 2023, the Court issued an order granting Plaintiff's motion, finding that Plaintiff had demonstrated a likelihood of success on the merits of its trade secret claims. ECF No. 33 (the "Injunction Order"). The Court's ruling was premised on the inference Plaintiff invited the Court to draw regarding the time frame of PALIoT's development of its pallet:

> …As shown by Plaintiff, PALIoT is a brand new company, founded by one or more of Lightning's former employees. PALIoT has managed to accomplish in one year, what it took Lightning over five years and $25 million in research and development to achieve. It can be inferred that such dramatic progress was possible because PALIoT relief on Lightning's former employees' knowledge of the trade secrets, processes and other information they gained from working at Lightning to set up its business…. *Id.*, at PageID.1499-1500.

The Court enjoined "PALIoT, its employees and agents … from using any Trade Secrets set forth in Schedule 2.1.4 of the Asset Purchase Agreement, which is expressly cited in this order above, and attached as an exhibit to the Complaint." *Id.*, at PageID.1503. But Schedule 2.1.4 does not identify any specific trade secrets.

On March 13, 2023, PALIoT filed a motion for reconsideration, raising a number of issues, including the Injunction Order's lack of specifity as to precisely

what PALIoT was enjoined from doing (ECF 35). The Injunction Order did not (a) specifically identify anything within the scope of Schedule 2.1.4 that qualified as a "trade secret" or (b) specifically identify any "trade secret" of Plaintiff that PALIoT used in the development of its own pallet. *Id*. PALIoT reiterated that it was not using any trade secrets of Plaintiff and again requested an evidentiary hearing. *Id*. As to the general categories of information that Plaintiff had claimed were its "trade secrets", PALIoT included a detailed explanation showing that it was not using what Plaintiff was claiming to be "trade secrets". *Id*.

On March 7, 2024, PALIoT filed a supplement to its reconsideration motion. ECF No. 45. This supplement (a) noted the USPTO's issuance to PALIoT on December 5, 2023 of U.S. Patent No. 11,834,223 B2 for a pallet invention (the "'223 Patent"); (b) updated the Court on the large financial investment PALIoT continued to make in its business; and (c) re-emphasized that PALIoT had used its own processes, methods, and ingenuity to develop its pallet. *Id*. On March 28, 2024, the Court entered an order denying PALIoT's reconsideration motion. ECF No. 46. The Court's response was that PALIoT need not worry as long as it was not using the yet to be identified "Trade secrets."

## III.   PALIoT's *Prior* Discovery Requests to Plaintiff.

This case is now over two years old and the Plaintiff has yet to make any detailed disclosure of what it claims are its "trade secrets" or explanation for how

these "trade secrets" are used or misappropriated by PALIoT. PALIoT served Plaintiff with detailed interrogatories and document requests designed to flush out the details of this case (**Ex. A**).

Plaintiff provided its answers on November 1, 2024, signed only by the attorney for Plaintiff and not under oath, in contravention of Fed. R. Civ. P. 33. *Id.* The answers did not provide details on any trade secrets, but repeated the general description of features of the Lightning/Palltronics pallet (most of which are advertised to the public) (**Ex. B**), or generic references such as the following:

> The Pallet Assembly and Manufacturing Assets include the sources, techniques, and mechanisms for assembling and spraying pallets, the structural specifics of the pallet design, and the processes for preserving and recovering materials during and after assembly. Finally, the Pallet Tracing and Use Assets include the technology used the environmental physical conditions and locations of pallets, the configuration and placement of that technology on and around pallets in use, and the methods and technology used to track pallets and for using that information to collect carbon credits. (**Ex. B**, answer to Interrogatory No. 1).

This generic description could be said for every pallet that is part of the smart pallet industry. Every smart pallet has techniques and mechanisms for spray and assembly, structural specifics of the design, and tracking technology. How or why is any of this a trade secret? What exactly are the trade secrets that are at issue in the case? Those questions are totally unanswered by this response.

Worse, when asked for the evidence that shows that PALIoT is actually using the "trade secrets" that Plaintiff complains about, the conclusory response to

7

interrogatory number 3 does not actually claim that PALIoT is using any "trade secrets" of the Plaintiff, other than to state that PALIoT is engaged in the identical business as Plaintiff—that is, trying to develop its own smart pallet technology. When asked for the facts showing that PALIoT had "misappropriated" these claimed trade secrets, Plaintiff's response stated no facts beyond PALIoT's hiring of *ex* Lightning employees. *See also* **Ex. B**, answer to Interrogatory No. 10. Based on these responses, PALIoT has at best only a general idea of the categories of information Plaintiff claims are its "trade secrets", nor is it aware of how it allegedly "misappropriated" them or is using them. PALIoT sent Plaintiff a detailed deficiency letter on November 7, 2024 **(Ex. C),** which was ignored.

## ARGUMENT

Discovery under the Federal Rules of Civil Procedure "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "A party seeking discovery may move for an order compelling an answer" if the opposing party "fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv). Under Fed. R. Civ. P. 37(a)(4), "[e]vasive and incomplete answers to discovery requests are

8

tantamount to no answer at all." *Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 210 (E.D. Mich. 2018) (Stafford, J.).

## IV. Plaintiff's Interrogatory Responses are Incomplete and Evasive, and Plaintiff Should be Compelled to Respond to them in Full.

"[I]nterrogatory answers must be responsive, full, complete and unevasive." *Miller v. Joaquin*, 431 F. Supp. 3d 906, 922 (E.D. Mich. 2019). Indeed, under Fed. R. Civ. P. 37(a)(4), "[e]vasive and incomplete answers to discovery requests are tantamount to no answer at all." *Siser N. Am., Inc..*, 325 F.R.D. at 210.

Plaintiff generally failed to provide responsive and unevasive answers to each of PALIoT's Interrogatories. These Interrogatories are reproduced below:

> **INTERROGATORY No. 1:** Identify, separately and with particularity, each trade secret of Plaintiff that forms the basis of the trade secret misappropriation claims alleged in Counts II and III of the Complaint.

> **INTERROGATORY No. 2:** For each trade secret identified in your answer to Interrogatory No. 1, provide a detailed explanation of how and when Defendant obtained the trade secret (or the information from which the trade secret could be derived), and identify the person(s) involved in obtaining the trade secret or information from which it could be derived.

> **INTERROGATORY No. 3:** For each trade secret identified in your answer to Interrogatory No. 1, provide a detailed explanation of how Defendant retained or used such trade secret, as alleged in the Complaint, including, without limitation, in Paragraphs 70 and 112.

> **INTERROGATORY No. 4:** Identify each vendor or supplier who furnished to Plaintiff or Lightning any labor or materials used in the design, development, manufacture, or distribution of any pallet, and describe with particularity what each such vendor or supplier furnished.

**INTERROGATORY No. 5:** Detail all policies and procedures implemented, and any other actions taken, by Plaintiff and Lightning to maintain the secrecy of each alleged trade secret identified in Plaintiff's answer to Interrogatory No. 1.

**INTERROGATORY No. 6:** From the inception of Lightning and particularly for each calendar year from 2020 to the present, state the following:

    A. The total number of pallets Plaintiff manufactured or caused to be manufactured in that year.

    B. The total number of pallets Plaintiff had in its inventory at the end of the year. 7

    C. The total number of pallets Plaintiff sold, leased, or rented in that year.

    D. The gross revenue Plaintiff earned from its pallet sales, leasing, or rentals, for that year.

    E. The net profit Plaintiff earned from its pallet sales, leasing, or rentals for that year.

**INTERROGATORY No. 7:** Identify all persons and entities who have purchased, leased, or rented a pallet from Plaintiff.

**INTERROGATORY No. 8:** If you contend that there is a basis for alleged money damages that would be due to you as a result of the trade secret misappropriation alleged in the Complaint, identify the basis therefore and any calculations thereof performed by you to date.

**INTERROGATORY No. 9:** Identify with particularity every act you contend constitutes misappropriation by PALIoT of a trade secret of Palltronics, when such act occurred, and who committed each such act.

**INTERROGATORY No. 10:** Identify with particularity every asset of Lightning you claim was used by PALIoT in contravention of the Sale Order, as alleged in the Complaint.

As a threshold matter, Plaintiff's responses to PALIoT's Interrogatories are deficient because they were not signed by a representative of a party or under oath and penalty of perjury as required by Fed. R. Civ. P. 33. Further, to the extent Plaintiff objects to providing any information because it requires protection under a protective order, Plaintiff has refused to commit to providing responsive information even if a protective order *were* in place. Additionally, Plaintiff's response to each of PALIoT's Interrogatories was substantively deficient.

Plaintiff's response to **Interrogatory No. 1** was non-responsive and evasive. **(Ex. B.)** PALIoT contends that Plaintiff does not have any actionable trade secrets, and Interrogatory No. 1 asked Plaintiff to identify "separately and with particularity" each trade secret at issue in Counts II and III of Plaintiff's complaint. Plaintiff's response merely refers PALIoT to a prior brief containing mere conclusions with no responsive details. Plaintiff's response also makes broad generic references such as to "acceptable wood sources and wood types," "sources and materials" for polymer spray materials, a "complete list of business partners and suppliers," and to sources, techniques, and mechanisms for assembling and spraying pallets. **(Ex. B.)** Such response fails to identify separately and with particularity any trade secrets. Rather, they are so generic they are meaningless and could literally mean anything, as they are common to every company that is engaged in the industry.

Plaintiff's response is particularly deficient in light of Michigan courts that have recognized that a trade secret plaintiff must identify its trade secrets with particularity. *See Dura Global Technologies, Inc. v. Magna Donnelly*, 2007 WL 4303294, at *3 (ED Mich 2007) (recognizing that Michigan Courts require that the alleged trade secret must be identified "clearly, unambiguously and with specificity" and that while "this specificity need not be shown at the pleading stage, this specificity can be required of the plaintiff through discovery"); *see also Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 380–81 (6th Cir. 2022) ("The trade secret must be defined with 'reasonable particularity.' . . . If a plaintiff effectively asserts that all information in or about its product is a trade secret, then it brings a case 'both too vague and too inclusive" (quoting *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583–84 (7th Cir. 2002)). Indeed, Plaintiff's vague **public** categorizations to date cannot, by definition, adequately specify its alleged confidential trade secrets or information:. "Any listing of trade secrets that are entitled to protection can only be done under a Protective Order . . . ." *A&P Tech., Inc. v. Lariviere*, No. 1:17-CV-534, 2017 WL 6606961, at *10 (S.D. Ohio Dec. 27, 2017) (requiring pre-discovery identification of trade secrets); *see also L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-CV-02868-MSK-KMT, 2011 WL 10858409, at *3 (D. Colo. Oct. 12, 2011) ("[T]he fact that all of [Plaintiff's discussions of its trade secrets have occurred in the public portions of the record

12

further suggests that [Plaintiff] failed to disclose [its] trade secrets with reasonable particularity."). Presently, there is no protective order in the case. The issue of the proper scope of a protective order is pending before the Court. *See* ECF No. 79 (Plaintiff's Motion for Protective Order).

Plaintiff's response to **Interrogatory No. 2** is similarly deficient. Interrogatory No. 2 asked Plaintiff to identify for each trade secret it identified in response to Interrogatory No. 1 how and when PALIoT allegedly obtained the trade secret and the persons involved in obtained each trade secret. Plaintiff's response merely lists former Lightning employees who are or were affiliated with PALIoT and stated on information and belief that these individuals "abused their positions" with lighting to access facilities, documents, materials, and equipment. **(Ex. B.)** This response is so broad and generic that it is meaningless and functionally nonresponsive. It does not indicate what documents, materials, or equipment Plaintiff is referring to, nor does it indicate that Plaintiff has any evidence that such events occurred. Plaintiff "[m]ust establish more than the existence of generalized trade secrets and the competitor's employment of a party's former employee who had knowledge of the trade secret." *Dura Global Technologies*, 2007 WL 4303294, at *5. Accordingly, PALIoT's Interrogatory No. 2 seeks information relevant to the elements Plaintiff must establish to support its claim, and Plaintiff should be compelled to respond fully.

Plaintiff's responses to **Interrogatory Nos. 3** and **9** are completely non-responsive. The Interrogatories ask for detailes regarding Plaintiff's claim that PALIoT has actually used what Plaintiff claims are trade secrets and information about what those acts are. Plaintiff's responses are given on information and belief and simply repeat the list of names from its answer to Interrogatory No. 2 and state a series of conclusions that the trade secrets were used, namely that it was done so "by abusing the position and access certain of these individuals maintained at Lightning's facilities." (**Ex. B,** answer to Interrogatory No. 3.) This level of detail is insufficient to meet Plaintiff's discovery obligations, and it should be compelled to supplement its response.

Plaintiff's response to **Interrogatory No. 4** is incomplete. The Interrogatory seeks a list of vendors and suppliers who furnished Plaintiff or Lightning with labor or materials used to develop the Lightning pallet. Despite Plaintiff's objection, this information is relevant to show whether the items Plaintiff claims are its intellectual property are in fact owned by third-parties. Further, Plaintiff claimed that its vendor and supplier list are a trade secret in its answer to Interrogatory No. 1, and therefore PALIoT is entitled to know who is on the list and whether their identity is indeed a "secret" as Plaintiff claims. Thus, Plaintiff's failure to answer Interrogatory No. 4 is a failure of its discovery obligations, and Plaintiff must be compelled to provide a full response.

Plaintiff's response to **Interrogatory No. 5** is evasive and incomplete. The Interrogatory asks Plaintiff to "detail all policies and procedures implements, and any other actions taken" by it to maintain the secrecy of the identified trade secrets in response to Interrogatory No. 1. Plaintiff's only responded that it "is aware" that confidentiality policies were implemented at Lightning, but it does not detail those policies, nor does it describe any actions taken related to confidentiality, such as whether any individuals referenced in its prior interrogatory answers ever signed such a confidentiality agreement or were aware of the purported "employment guide" referenced in Plaintiff's response.

Plaintiff failed to answer **Interrogatory Nos. 6, 7,** and **8**. Each seeks information as to Plaintiff's sales and profits from its pallets and its bases for its damages. Contrary to Plaintiff's objection, this information is relevant, as it relates to, among other things, proving any claimed damages. PALIoT's position is that there have been no sales to date of the Lightning pallet, and a trade secret plaintiff must show that the misappropriated information had value. *See Broad-Ocean Techs.*, 649 F. Supp. 3d at 591 (recognizing a trade secret must have value) (citing MCLA § 445.1902(d)). This information is not premature at this stage of litigation, and Plaintiff's discovery obligations require it to at least provide the factual basis for its allegations regarding damages, even if the calculations will be performed by an

15

expert. Accordingly, Plaintiff must be compelled to respond to Interrogatory Nos. 6, 7, and 8.

Plaintiff's answer to **Interrogatory No. 10** is also non-responsive. The Interrogatory asks for the specific list of assets Plaintiff claims PALIoT used in contravention of the sale order. But Plaintiff's answer fails to identify any such asset. Its response makes generic and sweeping statements that indicate Plaintiff is trying to claim that general knowledge and information known to the public and/or generally known to the industry are an "asset" of Lightning.  To the extent that is not the case, Plaintiff must be compelled to provide a full supplemental response.

In short, Plaintiff's interrogatory responses are incomplete and evasive. *See* Fed. R. Civ. P. 37(a)(4), and it should be compelled to respond in full to each Interrogatory.

## V.    Plaintiff Should be Compelled to Provide all Documents Responsive to the RFPs.

Plaintiff asserts a variety of boilerplate objections to PALIoT's Requests for Production. These objections are insufficient as a matter of law. *See Siser N. Am,, Inc.*, 325 F.R.D. at 209-10 ("Boilerplate objections are legally meaningless and amount to a waiver of an objection."). For instance, Plaintiff objects to several requests as seeking "information protected by the attorney-client or work-product privileges." (See e.g., **Ex. B,** Plaintiff's Responses to RFPs Nos. 14-35). However, to the extent Plaintiff is conflating its assertions of privilege with a desire to keep

16

the materials confidential, that does not create a privilege that exempts the documents from discovery. *See DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 684-85 (D. Kan. 2004) ("[A] general concern for protecting confidentiality does not equate to privilege. Thus information and documents are not shielded from discovery merely because they are confidential.")  The fact that an attorney for Plaintiff may have reviewed this information and made conclusions about it prior to any litigation or dispute does not render the information privileged.

Similarly, Plaintiff repeatedly claims that various requests are "overly broad and unduly burdensome." (See e.g., **Ex. B**, Plaintiff's Responses to RFPs Nos. 8,9, 14-16). However, there is no attempt to explain why these requests were overbroad or unduly burdensome. It is doubtful that, for instance, requests for the documented basis for Plaintiff's claim for money damages is unduly burdensome when it must have already conducted some review of such documents in order to bring its complaint.

That said, except for RFPs 6, 13, 41, 36-39, and 43-49, Plaintiff stated it will to "produce responsive documents to this Request, if such documents exist and are in Palltronics' possession and control." As a threshold matter, Plaintiff failed to affirmatively "state whether any responsive materials are being withheld on the basis of that objection" as required under Fed. R. Civ. P. 34(b)(1)(C) or whether it will conduct a reasonable search for responsive documents, so it is unclear whether

17

Plaintiff is withholding documents on the basis of the various objections or not and whether it will comply fully with its discovery obligations. Accordingly, even to the extent Plaintiff has agreed to produce responsive documents, it should be compelled to supplement its responses to indicate if it is withholding any documents based on its objections and affirmatively confirm it has conducted a reasonable search of its documents. Further, Plaintiff has not yet produced the documents it purportedly agreed to several months ago. Thus, the Court should compel Plaintiff to follow-through on its agreed production.

Plaintiff should also be compelled to product documents responsive to RFPs 6, 13, 41, 36-39, and 43-49. RFPs 6, 13, and 41 seek information regarding Plaintiff's business plans related to the pallets at issue, and RFPs 36-39 seek information relating to Plaintiff's sales or leases of pallets. Plaintiff's primary objection to these RFPs is relevance of the sought information. **(Ex. B.)** This objection is completely unfounded. Plaintiff's business plans and sales and lease information relates to Plaintiff's purported damages as well as to whether the alleged trade secrets actually constitute a "trade secret," as whether a trade secret has value is an element of Plaintiff's cause of action. *See Broad-Ocean Techs.*, 649 F. Supp. 3d at 591 (recognizing a trade secret must have value) (citing MCLA § 445.1902(d)).

RFPs 43-49 seek information regarding certification, validation, or testing of Plaintiff's pallets. Plaintiff again objects to the relevancy of these requests. **(Ex. B.)**

18

Plaintiff's objections should not be well-taken. The sought information is relevant to determine whether Plaintiff's product uses or incorporates any of the alleged "trade secrets" or assets that Plaintiff claims PALIoT misappropriated.   Thus, Plaintiff should be compelled to respond to the RFPs in full.

In sum, Plaintiff has agreed to produce documents in response to most of the requests at issue, but has not done so or confirmed that it will do so in accordance with its discovery obligations. The Court should hold Plaintiff to its word and compel it to produce these documents.   Further, the Court should compel Plaintiff to produce documents in response to RFPs 6, 13, 41, 36-39, and 43-49 because Plaintiff's objections as to the relevance of the Requests are unavailing.

## **CONCLUSION**

This motion should be granted, with the Court to order Plaintiff to fully respond to PALIoT's Discovery Requests.

Respectfully Submitted,

/s/ R. Christopher Cataldo
R. Christopher Cataldo (P39353)
Taft Stettinius & Hollister, LLP
Attorneys for PALIoT
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000
ccataldo@taftlaw.com

Dated: January 30, 2025

19

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2025 the foregoing was filed with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s/ R. Christopher Cataldo
Taft Stettinius & Hollister, LLP
Attorneys for PALIoT

171028920v2