UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PALLTRONICS, INC.,

                    Plaintiff,

v.

PALIoT SOLUTIONS, INC.,

                    Defendant.
_____/

Case No. 22-12854

Denise Page Hood
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**ORDER ON DEFENDANT'S MOTION TO REMOVE IMPROPER AEO
DESIGNATION AND RELATED MOTIONS (ECF Nos. 103, 105, 106, 110)**

Pending before the Court is Defendant PALIoT Solutions, Inc.'s *Motion to Remove Improper AEO Designation of Deposition Transcript of Richard Crow* (ECF No. 103). There are also a series of pending motions related to Defendant's motion, namely Defendant's *Motion to File Under Seal Exhibit A to its Reply* (ECF No. 106) and Plaintiff Palltronics, Inc.'s *Motion to Strike and for Sanctions* (ECF No. 105) and *Motion to Strike or, in the Alternative, For Leave to File a Sur-Reply* (ECF No. 110). For the following reasons, Plaintiff's first motion to strike is **GRANTED**, and Defendant's de-designation motion is **STRICKEN FROM THE RECORD**. Plaintiff's second motion to strike is **GRANTED IN PART AND DENIED IN PART**. Defendant's motion to seal is **DENIED AS MOOT**.

## I.   BACKGROUND

### A.   Defendant's Motion to De-Designate

The present issue arose on August 15, 2025, when Defendant filed its motion to remove Attorneys' Eyes Only ("AEO") designations that Plaintiff placed on certain excerpts of Richard Crow's deposition testimony.  (ECF No. 103). According to Plaintiff, the disputed excerpts involve information about the product and development and process of Palltronics' product (e.g., the "Product-Information Designations") and information about Palltronics' relationships with third-party vendors (e.g., the "Vendor-Information Designations").  (ECF No. 104, PageID.4791).

Defendant argues that the information cannot properly be designated as AEO under the two-tiered protective order ("PO") that is in effect in this case.  It argues that Plaintiff's designations cover publicly available materials and names thereby disqualifying such information from a Confidential or AEO designation. (ECF No. 103, PageID.4778).  To that end, Defendant contends that any of the purportedly publicly-available names designated AEO in the transcript needed to be disclosed as a part of Plaintiff's initial disclosures or witness list to the extent that those individuals have information relevant to this action.  (*Id.* at PageID.4778–79).  More broadly, however, Defendant argues that "Plaintiff has not made [the] specific showing of what competitive harm it would" suffer if the

information was de-designated and disclosed.  (*Id.* at PageID.4780–81).  Such a failure, the argument goes, means the material must be de-designated.  (*Id.*).  Defendant also contends that Plaintiff improperly designated the excerpts of Crow's testimony because the AEO-designated information consists of publicly available information.  (*Id.* at PageID.4781–83).

Notably, in making this argument, Defendant expressly referred to the substance of some of the challenged AEO designations; that is, Defendant named an individual and third-party vendors whose identities were designated AEO in Crow's deposition transcript.

For its part, Plaintiff responds that it properly designated the excerpts AEO since the information is properly protectable under the PO.  In that vein, it maintains that the Product-Information Designations consist of "non-public information about the status, manufacturing process, and materials for [its] pallet." (ECF No. 104, PageID.4793).  As for the Vendor-Information Designations, Plaintiff contends that "vendor relationships have been found to be trade secrets," so the AEO designation is proper; that said, Plaintiff did not affirmatively assert that the vendor information is a trade secret.  (*Id.* at PageID.4793–94).  It also referred to authority finding that vendor information can be considered confidential information that warrants an AEO designation.  (*Id.* at PageID.4794).  Since it believes it properly designated the excerpts AEO, Plaintiff concludes that

3

disclosure of such competitively sensitive information is likely to cause an injury to Plaintiff if de-designated.

Plaintiff said as much in a letter it sent to defense counsel concerning the Crow deposition transcript.  (ECF No. 104-1).  There, Plaintiff explained that the Product-Information Designations touched on Palltronics' product and development relative to the Lightning Pallet, matters which may give Defendant a competitive advantage in the pallet pooling industry if disclosed to it.  (*Id.* at PageID.4802–03).  Similarly, Plaintiff designated the names of individuals and third-party vendors AEO because the names speak directly to Plaintiff's research and development efforts—efforts which would be disclosed to a direct competitor if de-designated.  (*Id.* at PageID.4803).

Plaintiff also identified procedural issues with Defendant's motion.  For instance, it points out that Defendant did not include a copy of the transcript with its motion, consequently rendering Defendant's motion vague and unsupported.  (*Id.* at PageID.4795–96).  To that end, Plaintiff suggests that Defendant mischaracterized the disputed designations when Defendant suggested its motion only dealt with "third-party manufacturers" without recognizing the substance of Product-Information Designations.  (*Id.* at PageID.4796).  Finally, Plaintiff asserts that Defendant's reliance on its public disclosure argument is flawed because Plaintiff "has not publicly disclosed any of its confidential business information."

(*Id.* at PageID.4797). It insists that Lightning Technologies' ("Lightning") publication about the Lightning Pallet does not control whether there is publicly available information about Plaintiff's pallet. (*Id.*).

In its reply brief on this motion, Defendant included as an exhibit the Crow deposition testimony and filed a motion to seal that exhibit. (ECF Nos. 107-2; 106). It therefore insists that Plaintiff's argument about the lack of the transcript is immaterial. (ECF No. 107, PageID.4830–31). And Defendant stands on its arguments on Plaintiff's failure to show competitive harm and the public availability of the AEO-designated information. (*Id.* at PageID.4831–34). On the latter argument, Defendant referred to new evidence not initially cited in its principal brief, namely Plaintiff's initial disclosures and, notably, emails from a third-party received in response to a subpoena that Defendant claims did not bear a confidentiality designation therefore evincing the lack of confidential relationships between Plaintiff and its third-party vendors. (*Id.* at PageID.4833).

### B. Plaintiff's First Motion to Strike

On the same day Plaintiff filed its response in opposition to Defendant's de-designation motion, it filed its *Motion to Strike and for Sanctions* (ECF No. 105). There, Plaintiff contends that Defendant violated the PO when it filed its de-designation motion because the motion published materials that Plaintiff has designated AEO on the public docket. (*Id.* at PageID.4812). Though Plaintiff's

counsel contacted defense counsel and asked it to refile its motion under seal, Defendant refused to do so.  (*Id.* at PageID.4812; ECF No. 105-1, PageID.4821). Plaintiff thus asks the Court to strike the de-designation motion and award sanctions for Defendant's violation of the PO.

In support of this position, Plaintiff relies on Paragraphs 15 and 16 of the PO.  (ECF No. 105, PageID.4813–16; ECF No. 111, PageID.4931–35).  The former provision articulates the process for challenging Confidential or Highly Confidential designations under the PO; notably, the PO states that designated documents are "treated as Confidential or Highly Confidential until the Court rules."  (ECF No. 101, PageID.4720, ¶ 15).  The latter provision prohibits the party receiving a designated document from filing it in the public record absent written permission from the disclosing party or a court order.  (*Id.* at PageID.4722, ¶ 16). That said, the PO permits parties to file designated materials under seal in accordance with this Court's Local Rules.  (*Id.*).  Since Defendant did not follow the procedures set forth in the PO, Plaintiff says, the Court should strike Defendant's de-designation motion and grant appropriate sanctions under Rule 37(b)(2) or this Court's inherent authority.  (ECF No. 105, PageID.4816).

Defendant disagrees with the alleged violations of the PO and takes refuge in Paragraph 10 of the PO.  (ECF No. 109, PageID.4899–4900).  This part of the PO states that "nothing in this Order shall prevent or in any way limit disclosure,

6

use or dissemination of any Confidential or Highly Confidential Information that" "is or became public knowledge, not in breach of this Order." (ECF No. 101, PageID.4716, ¶ 10(a)). The PO also states that if a "dispute arises as to disclosure limitations for any specific Confidential Information, the burden shall be on the party seeking unlimited disclosure to prove that such Confidential Information was lawfully obtained through the above means or sources." (*Id.* at PageID.4717, ¶ 10). To that end, Defendant insists that it did not violate the PO because the AEO-designated information it published in its de-designation motion was publicly available. (ECF No. 109, PageID.4900–02). Notably, in making this argument, Defendant went out of its way to name certain third-party vendors it named in its de-designation motion. (*Id.* at PageID.4901) (using brackets to alter a quote and identify third-party vendors).

To that end, Defendant says that sanctions are not warranted. As an initial matter, Defendant contends that the vehicle for Plaintiff's sanctions motion is unclear. (*Id.* at PageID.4898–99). Defendant states that the use of the Court's inherent civil contempt power would be improper because Plaintiff cannot satisfy its burden for such sanctions and any ambiguities in the PO need to be read in Defendant's favor. (*Id.*). Defendant therefore says that if sanctions are awarded, the Court should limit sanctions to striking its de-designation motion. (*Id.* at PageID.4903).

## C.     Plaintiff's Second Motion to Strike

On September 16, 2025, Plaintiff filed a second motion to strike seeking to remove Defendant's reply brief in support of its de-designation motion from the record. (ECF No. 110). In this motion, Plaintiff makes two principal arguments. First, it asserts that Defendant again violated the PO when it included AEO-designated information with its public filing. (*Id.* at PageID.4915–17). This time Plaintiff takes issue with Defendant's reference to emails between Plaintiff and a third-party vendor—a vendor which Defendant identified by name in its reply brief. On this score, Plaintiff also asserts that Defendant misled the Court when it suggested that it received the undesignated emails via subpoena. Plaintiff states that it is the party that actually received the emails; and on top of that, Plaintiff says that it designated the emails and the third-party vendor's identity AEO before sharing them with Defendant in discovery. Second, Plaintiff argues that Defendant improperly introduced new arguments and evidence that Plaintiff did not have a chance to address. (*Id.* at PageID.4917–21). Plaintiff specifically takes issue with Defendant including the Crow deposition transcript as an exhibit to the reply brief and Defendant's purportedly new reliance on Plaintiff's failure to make a sufficient showing of competitive harm. (*Id.* at PageID.4919). Accordingly, Plaintiff's asks the Court to strike Defendant's reply brief or permit Plaintiff to file a sur-reply. (*Id.* at PageID.4921–22).

8

In its response to Plaintiff's second motion to strike, Defendant again asserts that it did not violate the PO by referring to AEO-designated information because the information was publicly available, not confidential, and—when combined with its arguments on the first motion to strike—properly disclosed based on Paragraph 10 of the PO.  (ECF No. 114, PageID.4972–73).  Defendant also says that it did not include new arguments or evidence in its reply brief.  (*Id.* at PageID.4974–76).  On that front, it insists that it included its burden-based argument in its de-designation motion and that Plaintiff misunderstands the arguments raised in that motion.  Defendant also states that it cited the sections of the Crow deposition it challenged in its motion, so Plaintiff cannot complain about the de-designation motion's omission of the deposition transcript since Plaintiff already had that transcript.  In that vein, it concludes that Plaintiff did not suffer any prejudice that warrants leave to file a sur-reply.  (*Id.* at PageID.4976–77).  Separately, the Court notes that Defendant again identified one of the third-party vendors in its response brief; the vendor it named is one of the vendors it identified in the de-designation motion, an action which prompted Plaintiff's first motion to strike.

## II.   ANALYSIS

If the Court grants Plaintiff's motion to strike, such a ruling obviates the need to resolve Defendant's de-designation motion.  The Court also understands

9

Plaintiff's second motion to strike as relying on the arguments it raised in the first motion.  So the Court begins with Plaintiff's motions to strike.

### A.  Plaintiff's Motions to Strike (ECF Nos. 105, 110)

As the dispute surrounding Plaintiff's first motion to strike relates to the provisions of the PO, the Court starts there.

#### 1.  The Active Two-Tiered Protective Order (ECF No. 101)

On May 20, 2025, the Court granted Plaintiff's motion for a protective order and entered a two-tiered protective order.  (ECF Nos. 100, 101).  The PO "govern[s] disclosure and use by the parties of all documents, testimony, exhibits, interrogatory answers, responses to requests to admit and any other materials and information disclosed or provided" in this case.  (ECF No. 101, PageID.4708).

The PO defines "Confidential Information" as "all documents and testimony, and all information contained therein" that contains either "(i) trade secrets or other confidential research, development, financial, proprietary, or commercial information that may be subject to a protective order under [Federal Rule of Civil Procedure] 26(c)(1)(G); or (ii) confidential, non-public personal information that is protected from disclosure by statute, regulation or otherwise." (*Id.* at PageID.4708–09, ¶ 2(a)(i)–(ii)).  A party that receives materials designated as "Confidential" can only disclose those materials to certain persons referenced in the PO absent an order from the Court or written permission from the disclosing

party.  (*Id.* at PageID.4710–11, ¶ 4(a)–(j)).  To designate something

"Confidential," there must be a good-faith basis for the designation.  (*Id.* at

PageID.4710, ¶ 3).

The PO also allows for materials to be designated as "Highly Confidential,"

or Attorneys' Eyes Only, if the disclosing party "in good faith reasonably believes

that disclosure of the Highly Confidential Information to persons other than" those

identified in the PO "is substantially likely to cause injury to the Disclosing Party."

(*Id.* at PageID.4711–13, ¶ 5(a)–(i)).  Unlike materials designated as "Confidential,"

AEO-designated items cannot be disclosed to "named parties including in-house

counsel, officers, directors, and employees of the Receiving Party to whom

disclosure is reasonably necessary for this Action."  (*Id.* at PageID.4710, ¶ 4(b)).

Under the PO, the disclosing party "must limit designations of Confidential

and Highly Confidential Information to only those parts of documents, testimony,

or material that are clearly identified as containing Confidential or Highly

Confidential Information and must specify for each portion the level of protection

being asserted."  (*Id.* at PageID.4713, ¶ 6).

As mentioned, the PO provides a mechanism for challenging a party's

decision to designate materials Confidential or Highly Confidential.  The challenge

mechanism states that if the parties cannot resolve the dispute among themselves,

then "the parties shall submit their dispute to the Court for resolution."  (*Id.* at

PageID.4720, ¶ 15).  The PO further indicates that the challenged material should be treated in accordance with the designation affixed to it until the Court rules otherwise.  (*Id.*).  In turn, the PO prohibits the party receiving Confidential or Highly Confidential materials from filing those materials in the public record absent a court order or written permission from the disclosing party.  (*Id.* at PageID.4722, ¶ 16).  Otherwise, materials designated Confidential and Highly Confidential are to be filed under seal in accordance with Local Court rules.  (*Id.*).

Defendant believes that Paragraph 10 of the PO permits it to side-step the PO's challenge mechanism.  In essence, Defendant reads this provision of the PO as permitting it to file in the public record AEO-designated information because the information is publicly available and the PO does not prohibit the disclosure of publicly available information that is improperly designated as AEO.  (*Id.* at PageID.4716, ¶ 10(a)).  Defendant says its reading of the PO is reasonable and made in good faith.  The Court could not disagree more.

Defendant's position puts the cart well before the horse.  Paragraph 10 of the PO anticipates disputes surrounding the limitations on one's ability to disseminate designated materials.  Indeed, it states that the party seeking unlimited disclosure bears the burden in proving that designated materials were lawfully obtained. Paragraph 10 therefore provides guardrails in case of a dispute.  And where there is a dispute, the PO's challenge mechanism controls.  (*Id.* at PageID.4720, ¶ 15)

12

("[T]he parties *shall* submit their dispute to the Court for resolution in accordance with the procedures set forth below.") (emphasis added).  In turn, materials designated as Confidential or Highly Confidential "*will* be treated" as such until the Court rules otherwise.  (*Id.*) (emphasis added).  And designated materials cannot be filed in the public record without a court order or written permission from the disclosing party.

Here, as it relates to the subject of Plaintiff's first motion to strike, Defendant does not contest the fact that it was aware of what Plaintiff designated as AEO in the Crow deposition.  Indeed, Defendant moved to file the Crow deposition transcript under seal when it filed its reply brief and, in doing so, referred to the PO.  (ECF No. 106, PageID.4827).  Since Defendant sought to challenge those designations, Defendant had to use the PO's challenge mechanism and respect Plaintiff's AEO's designations regardless of its belief that the designations were improper.  And since there was no court order or written permission from Plaintiff, Defendant violated the PO when it filed AEO-designated information in the public record.  Paragraph 10 does not provide a safe harbor for this blatant violation of the PO because that provision necessarily triggers the PO's challenge mechanism in the case of a dispute.

For Defendant to argue that its position is reasonable is frankly absurd.  Consider the consequences of its filing.  Essentially, Defendant seeks to de-

13

designate information in a motion in which it has already disclosed that very information to the public.  In other words, the very filing of Defendant's motion gives it some of the very relief it seeks in that motion.  Defendant's reading of the PO also negates any need for the challenge mechanism which is the only method for dispute resolution articulated in the PO.  Moreover, Defendant's reading does not account for the possibility that it is mistaken.  If the designated information was not publicly disclosed (before Defendant decided to do so in its motion), then how is the disclosing party and the Court to ensure that appropriately designated information was not improperly disclosed?  The Court cannot fathom a universe where Defendant's reading is reasonable.

To make matters worse, the PO provides a simple solution—Defendant could have filed its motion under seal.  In doing so, it could have made the same arguments all while respecting the PO and Plaintiff's AEO designations.  Defendant was even aware of its ability to file the information under seal, especially as Plaintiff asked Defendant to do so.  (ECF No. 106).  But rather than take the conservative approach to its motion, Defendant cavalierly published AEO-designated information based solely on its belief that it is correct on the underlying issues.  And to go one-step further, Defendant violated the PO each time it referred to the same AEO-designated information in its subsequent filings, at times going

out of its way to publicly name certain third-party vendors, where it was unnecessary to do so.

The same reasoning applies to Plaintiff's second motion to strike.  There, Plaintiff moved to strike Defendant's reply brief in support of its de-designation motion because that brief also published AEO-designated information.  (ECF No. 110).  Specifically, Defendant referred to emails between Plaintiff and a third-party vendor.  (ECF No. 107, PageID.4833).  Though Defendant asserts that the vendor produced the emails without a confidentiality designation, Plaintiff is the party that initially received the emails from the vendor.  (*Id.*; ECF No. 110, PageID.4916).  And before Plaintiff shared those emails with Defendant in discovery, Plaintiff designated the name of the vendor and the emails AEO.  (ECF No. 110, PageID.4915–17).  In response, Defendant did not deny that the vendor's name was so designated; instead, it made the same argument as before—the designated information was publicly available and therefore could be disclosed under the PO because the AEO designation was improper.  (ECF No. 114, PageID.4972–73).  Notably, Defendant continued to name the third-party vendor in its response brief.  (*Id.*).

Again, Defendant's reliance on Paragraph 10 of the PO is misplaced considering the PO's instruction to treat Confidential and Highly Confidential information as so designated until the Court rules otherwise.  Instead, Defendant

elected to publish additional AEO-designated information in the record before the Court could rule on the merits of the de-designation motion.

The Court cannot and will not permit such behavior to continue.

### 2.    Sanctions

Though Plaintiff asks the Court to strike Defendant's de-designation motion, it did not clearly identify the vehicle through which the Court should do so. Plaintiff largely relies on the decision in *Yates v. Applied Performance Techs., Inc.*, 205 F.R.D. 497, 500–01 (S.D. Ohio 2002) where the court struck deposition testimony filed in violation of a protective order but did not explain the basis for doing so despite pointing out that it could not formally sanction counsel based on the nature of the violation.  The *Yates* Court and Plaintiff also cite Moore's Federal Practice which, in turn, discusses a district court's vast discretion when determining the appropriate sanction for violations of a protective order. 6 Moore's Federal Practice – Civil § 26.108[2] (2026).  Accordingly, the Court understands Plaintiff's motions to strike as asking the Court to strike Defendant's de-designation motion and related reply brief as a sanction for violating the PO and to issue other sanctions the Court deems proper.

With that understanding, Plaintiff's request for sanctions referred to Rule 37(b)(2) and the Court's inherent authority.  (ECF No. 105, PageID.4816).  The Court addresses each position in kind.

16

a.      *Rule 37(b)(2) Sanctions*

"A party may be sanctioned under Fed. R. Civ. P. 37(b)(2)(A) for violation

of a protective order."  *Wilson v. City of River Rouge*, No. 13-12461, 2014 WL

5800018, at \*1 (E.D. Mich. Nov. 7, 2014) (citing *Coleman v. Am. Red Cross*, 979

F.2d 1135, 1140 (6th Cir. 1992)); *see also Shurwest, LLC. v. Howard*, No. 5:19-

CV-180-REW, 2020 WL 4730540, at \*2 (E.D. Ky. June 3, 2020) (same), *report*

*and recommendation adopted sub nom. Shurwest, LLC v. Howard*, 2020 WL

4730541 (E.D. Ky. June 18, 2020); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094

n.1 (6th Cir. 1994) (analyzing a district court's dismissal of a case for violating a

protective order under Rules 41(b) and 37(b)).[1]

Since Defendant violated the PO, the Court can impose sanctions that may

include:

> (i) directing that the matters embraced in the order or other designated
> facts be taken as established for purposes of the action, as the
> prevailing party claims;

---

[1] Though there is some dispute on this matter, *see, e.g.*, *Best Process Sols., Inc. v. Blue Phoenix Inashco USA, Inc.*, No. 1:21-CV-0662, 2023 WL 7323327, at \*4 (N.D. Ohio Nov. 7, 2023) (identifying the varying ways to sanction the violation of a protective order), district courts in this Circuit have used Rule 37(b)(2) to remedy the violation of a protective order.  *See Wilson*, 2014 WL 5800018, at \*1; *Shurwest, LLC.*, 2020 WL 4730540, at \*2; *Brown v. Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2015 WL 4742686, at \*5–15 (S.D. Ohio Aug. 11, 2015); *Sigma Corp. v. Island Indus., Inc.*, No. 2:22-cv-02436-JPM-CGC, 2023 WL 2290793, at \*6 (W.D. Tenn. Feb. 28, 2023) (suggesting that plaintiff could seek sanctions under Rule 37(b)(2) for a violation of a protective order).  More importantly, to the Court's knowledge, neither the Supreme Court nor the Sixth Circuit have reversed the decision in *Coleman v. Am. Red Cross* on which *Wilson* and *Shurwest, LLC* rely; likewise, the 1994 decision rendered by the Sixth Circuit in that case remains good law.

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii).  This list is non-exhaustive, and the Court has wide discretion to determine an appropriate sanction, if any.  *See Saginaw Chippewa Indian Tribe of Michigan v. Blue Cross Blue Shield of Michigan*, No. 1:16-CV-10317, 2023 WL 1452062, at *10 (E.D. Mich. Feb. 1, 2023) (citations omitted).  The Court "must" also "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

To determine the appropriate sanction under Rule 37(b)(2)(A), district courts weigh four factors: (1) "whether a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault"; (2) "whether the adversary was prejudiced by the party's failure to cooperate in discovery"; (3) "whether the party has warned that failure to cooperate could lead to the sanction"; and (4) "whether less drastic

18

sanctions were first imposed or considered." *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997); *see also Victor v. Reynolds*, 649 F. Supp. 3d 499, 505–06 (E.D. Mich. 2023); *Brown*, 2015 WL 4742686, at *6 (applying these factors to a violation of a protective order). In imposing sanctions under Rule 37, the Court must be careful not to penalize a party for his attorney's ineptitude or sanctionable conduct. *See Freeland*, 103 F.3d at 1277–78. Even so, "clients must be held accountable for the acts and omissions of their attorneys." *In re Love*, 3 F. App'x 497, 498 (6th Cir. 2001) (per curiam) (citation modified).

   ***Willfulness, Bad Faith, or Fault***. For the Court to find willfulness, bad faith, or fault there must be a "clear record of delay or contumacious conduct." *Barron v. Univ. of Michigan*, 613 F. App'x 480, 484 (6th Cir. 2015) (citation modified). That is, the party's actions "'must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings.'" *Id.* (quoting *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013)); *Bradley J. Delp Revocable Tr. v. MSJMR 2008 Irrevocable Tr.*, 665 F. App'x 514, 521–22 (6th Cir. 2016).

   It is not difficult for the Court to conclude that Defendant's actions reflect a reckless disregard for the effect of its conduct on these proceedings. The broader context of this case cannot be forgotten. The parties are direct competitors in the pallet pooling industry. In Lightning's bankruptcy proceeding, Plaintiff was the

winning bidder for Lightning's assets, and Defendant was the back-up bidder. (ECF No. 65, PageID.2522, ¶ 18–19).  Notably, a former Lightning employee incorporated Defendant just two weeks before the initiation of that bankruptcy proceeding, and Defendant has employed at least nine former Lightning employees, including some in high level executive positions.  (ECF No. 8, PageID.618).  There is a preliminary injunction in place based on Plaintiff's likelihood of success on trade secrets misappropriation claims it lodged against Defendant and because Plaintiff would suffer immediate and irreparable harm in the form of unfair competition.  (ECF No. 33).  This is not even to mention that Defendant was the subject of a civil contempt order from the Bankruptcy Court for using Lightning's LinkedIn page, an asset which Plaintiff bought in the Asset Purchase Agreement.  (ECF No. 83, PageID.3942).  It is for these reasons, in part, that the Court granted Plaintiff's motion for a two-tier protective order over Defendant's opposition.  (ECF No. 100).

Yet despite knowing that it is not necessarily litigating on a clean slate, Defendant elected to publish AEO-designated information in the public record so that anyone—including Defendant itself, a direct competitor accused of trade secrets misappropriation—could read it.  Whether Defendant is correct on the underlying issue is immaterial.  The PO required Defendant to use its challenge mechanism, and that mechanism required Defendant to respect Plaintiff's AEO-

designations until the Court ruled on its motion.  Even more concerning is Defendant's decision to publish AEO-designated information in its filings related to the motions discussed above, at times going out of its way to alter quotations to do so.

Defendant's conduct evinces its reckless disregard for the protections articulated in the PO, especially because it moved to seal the Crow deposition transcript based on the information designated AEO in the testimony yet continued to refer to AEO-designated information in its reply brief.  Rather than wait for the Court to rule on the dispute as the PO requires, Defendant essentially decided to grant itself the very relief it sought in the de-designation motion without regard for the consequences of doing so.

***Prejudice to Plaintiff****.*  Plaintiff has undoubtedly been prejudiced as a result of Defendant's conduct.  Even if Defendant is correct on the merits of its de-designation motion, Defendant's conduct had undermined the protections in the PO—an order the Court entered so that the parties could participate in discovery without concerns that the other party would improperly disclose sensitive, competitive, and confidential business information.  In doing so, Defendant forced Plaintiff to move to strike Defendant's violative filings thereby expending "time, money, and effort in pursuit of cooperation which [Defendant] was legally obligated to provide." *Norris v. MK Holdings, Inc.*, 734 F. App'x 950, 958 (6th

21

Cir. 2018) (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997) and *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 739 (6th Cir. 2008)) (citation modified).

***Notice***.  To this point, the Court has not given an express warning that a violation of the PO would subject the violating party to sanctions.  But "[w]here a court finds that a party acted in bad faith, notice is not required."  *Brown*, 2015 WL 4742686, at *8 (citing *Harmon*, 110 F.3d at 367).  Here, the Court has already concluded that Defendant's reckless disregard for the PO evinces willful, bad faith conduct.  Accordingly, this factor favors Plaintiff.  And in any event, "no one factor under the Rule 37(b) sanctions analysis is dispositive and 'prior warning is not indispensable' to the imposition of such sanctions."  *Id.* (citing *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) and *Fharmacy Recs. v. Nassar*, 379 F. App'x 522, 524 (6th Cir. 2010)) (citation modified).

***Consideration of Lesser Sanctions***.  The Court is mindful that any sanctions it may award must be tailored to address the sanctionable conduct.  Here, Plaintiff has asked that the Court strike Defendant's de-designation motion.  Granting this request would remove one of the offending filings from the record.  Notably, Defendant stated that "if the Court were to reach the issue of sanctions, then striking [its] De-Designation Motion would constitute a sufficient sanction under these circumstances."  (ECF No. 109, PageID.4903).  And if striking the de-

designation motion is an appropriate sanction, then it follows that striking

Plaintiff's reply brief for the same violation is proper as well. Considering the

blatant nature of Defendant's violation of the PO, the Court agrees that simply

sealing Plaintiff's motion and briefing is an insufficient sanction and that striking

Defendant's de-designation motion and reply brief is an appropriate remedy.

*Attorney's Fees and Costs*. As mentioned above, Rule 37(b)(2)(C) requires

the Court to grant an award of fees and costs unless the violation of the PO was

substantially justified or other circumstances render such an award unjust.

Defendant suggested that an award of costs and fees would be unwarranted

because any violation of the PO was the result of ambiguities in the PO. (ECF No.

109, PageID.4903) (citing *Powell Mountain Energy, LLC v. Manalapan Land Co.,

Ltd.*, No. 5:09-CV-305-JBC, 2011 WL 13234313, at *4 (E.D. Ky. Jan. 18, 2011)).

But the PO is not ambiguous. Again, Paragraph 10 of the PO contemplates a

dispute and places the burden on the party seeking unlimited disclosure. Disputes

under the PO must go through the challenge mechanism which requires the

challenger to respect the designation on the challenged materials until the Court

resolves the dispute. In turn, Defendant could not file AEO-designated

information in the public record until the Court ruled on the propriety of the de-

designation motion. The PO is unambiguous on this matter. In fact, Defendant

23

seemed to understand this when it moved to file the Crow deposition transcript under seal.

Accordingly, the Court finds that an award of attorney's fees and costs related to Plaintiff's first motion to strike is warranted.  In that vein, the Court finds that defense counsel must reimburse Plaintiff for the costs and fees associated with its first motion to strike.  After all, AEO-designated information cannot be disclosed to the receiving party.  Assuming that defense counsel at least honored Plaintiff's AEO-designations when drafting its de-designation motion, only counsel would have been privy to the designations; as such, defense counsel is responsible for the erroneous reading of the PO.  Consequently, defense counsel should bear the responsibility for violating the PO and compensate Plaintiff for forcing it to enforce unambiguous provisions in the PO.

An award of attorney's fees and costs is also proper with respect to Plaintiff's second motion to strike.  This time, however, that award should be limited to cover the fees and costs Plaintiff incurred with respect to its arguments on Defendant's violation of the PO.  The Court will not order defense counsel to reimburse Plaintiff for costs incurred while drafting its "new arguments and evidence" contentions.

### b.      *Inherent Authority Sanctions*

Even if Rule 37(b)(2) is not the proper vehicle, the Court can still exercise its inherent authority to sanction Defendant.

Admittedly, the source for Plaintiff's request for inherent authority sanctions is unclear.  The Court's inherent authority provides various avenues for addressing sanctionable conduct.  *See Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001) ("A district court may award sanctions pursuant to its inherent powers when bad faith occurs.  The power to punish for contempt also is an inherent power of the federal courts, including the power to punish violations of their own orders.").  In its briefing, Plaintiff referred to *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 500–03 (N.D. Ohio 2013), which referred to the Court's inherent authority to sanction when a party has acted in bad faith or when a party's conduct is "'tantamount to bad faith.'"  292 F.R.D. at 502–03 (citing *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011)).  And the *Yates* decision on which Plaintiff also relied cited Moore's treatise which notes that "[c]ontempt sanctions are frequently imposed against a person who violates a protective order."  6 Moore's Federal Practice – Civil § 26.108[2] (2026).

Defendant assumes that Plaintiff's motions to strike request a finding of contempt for the violation of the PO.  But the Court need not exercise its contempt authority to hold Defendant accountable for its violation of the PO, especially since

25

"courts must exercise the contempt sanction with caution and use '[t]he least possible power adequate to the proposed end.'" *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 799 (6th Cir. 2017) (quoting *United States v. Wilson*, 421 U.S. 309, 319 (1975)); *see also Banner v. City of Flint*, 99 F. App'x 29, 37 (6th Cir. 2004) ("Imposition of sanctions comes from the court's power to police itself, so that a court can vindicate its authority without resorting to a finding of contempt of court.") (citation omitted).  Because the Court's inherent authority to sanction bad faith conduct is sufficient to hold Defendant accountable for its actions, the Court need not address the propriety of a contempt finding.

"A district court has inherent power to sanction a party when that party exhibits bad faith." *Bradley J. Delp Revocable Tr.*, 665 F. App'x at 520 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–50 (1991)).  Inherent authority sanctions "derive[ ] from [a district court's] power to impose respect in its presence, control the litigants before it, and guarantee the integrity of the courts." *Id.*  "Due to 'their very potency, inherent powers must be exercised with restraint and discretion.'" *Id.* (quoting *Chambers*, 501 U.S. at 44–45).

The Court may also award attorneys' fees and costs under its inherent powers "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" or "when the conduct is tantamount to bad faith." *Metz*, 655 F.3d at 488 (citation modified); *see also Banner*, 99 F. App'x at 36–37 ("When an

attorney or litigant has demonstrated bad faith in the conduct of the litigation, the court has the inherent authority to assess an award of attorneys' fees.") (citation omitted). Bad faith conduct, in turn, refers to conduct that is intentional or reckless—negligence is not enough. *Webasto Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*, 323 F. Supp. 3d 935, 939–40 (E.D. Mich. 2018). That said, "attorneys' fees have been awarded under inherent authority 'in the interest of justice' with no finding of bad faith." *Banner*, 99 F. App'x at 37 (quoting *Ray A. Scharer & Co. v. Plabell Rubber Prods., Inc.*, 858 F.2d 317, 320 (6th Cir. 1988)).

For the reasons stated above, *see supra* Subsection II.A.2.a., the Court finds that Defendant acted in bad faith when it decided to publish AEO-designated information based on its flawed reading of the PO. At the very least Defendant acted recklessly; at most, Defendant acted intentionally given its repeated publication of AEO-designated materials in its filings, despite also moving to seal the Crow deposition transcript because of the AEO-designated information contained therein. Accordingly, the Court reiterates that striking Defendant's de-designation motion is a proper sanction. And for the same reasons, the Court also concludes that defense counsel should bear the costs of reimbursing Plaintiff for the fees and costs expended on its first motion to strike and the part of the second motion to strike focused on Defendant's violation of the PO.

### B.    Additional Relief

As mentioned, Defendant referred to AEO-designated information throughout its filings, including its response briefs to Plaintiff's motions to strike. Though Plaintiff did not move to also strike these filings (which would have likely prompted Defendant to name AEO-designated information thereby prompting another motion and so on), it is prudent to strike these filings as well as a sanction under the Court's inherent authority.  To that end, the same analysis applies equally to Defendant's response briefs (ECF Nos. 109, 114).  *See supra* Subsection II.A.2.b.

The Court also notes that apart from Rule 37(b)(2) and its inherent authority sanctions, the Court also has the inherent authority to "strike irrelevant, abusive, or otherwise improper materials from the docket."  *Derby v. Pleasant Beach Mobile Home Resort, LLC*, No. 1:25-CV-11324-TGB-PTM, 2025 WL 2014373, at *5 (E.D. Mich. July 17, 2025); *see also Sultaana v. Jerman*, No. 1:15-cv-382, 2019 WL 6343475, at *5 (N.D. Ohio Nov. 27, 2019) (citing *Am. C.L. Union of Kentucky v. McCreary Cnty., Ky.*, 607 F.3d 439, 451 (6th Cir. 2010)) ("The court may strike improvident filings based on its inherent authority to manage its docket."); *Sinomax USA, Inc. v. Am. Signature, Inc.*, No. 2:21-CV-3925, 2023 WL 2752488, at *2 (S.D. Ohio Apr. 3, 2023) ("Using this inherent authority, the Court may 'strike any filed paper which it determines to be abusive or *otherwise improper*

under the circumstances.'") (citation modified).  Under the circumstances here, the Court's inherent authority to manage its docket provides a separate basis for striking Defendant's filings that improperly contain AEO-designated information in violation of the PO.

Lastly, the Court directs Defendant to Paragraph 11 of the PO.  This provision addresses what the receiving party is to do when it "learns that, by inadvertence or otherwise, it has disclosed Confidential or Highly Confidential Information to any person or in any circumstance not authorized under this Order." (ECF No. 101, PageID.4717, ¶ 11).  Defendant is **ORDERED** to take the actions enumerated in Paragraph 11 and provide written certification to the Court that it has done so **no later than fourteen days after this Order is filed**.

### C.    Defendant's Motion to Seal (ECF No. 106)

Defendant filed with its reply brief a motion to seal the Crow deposition transcript.  As the de-designation motion and reply brief are now stricken from the record, the motion to seal is denied as moot.  Even so, the Court will strike the exhibit from the record as well to protect AEO-designated material that Defendant has not properly challenged.

## III.   CONCLUSION

For the above stated reasons, Plaintiff's *Motion to Strike and for Sanctions* (ECF No. 105) is **GRANTED**, and Defendant's *Motion to Remove Improper AEO*

29

*Designation of Deposition Transcript of Richard Crow* (ECF No. 103) is hereby **STRICKEN** from the record. Plaintiff's *Motion to Strike or, in the alternative, For Leave to File a Sur-Reply* (ECF No. 110) is **GRANTED** to the extent that it requests that Defendant's reply brief be stricken from the record for violating the PO but **DENIED** as to the rest of the relief sought in that motion. Because Defendant's de-designation motion and related reply brief are to be stricken from the record, Defendant's related *Motion to File Under Seal Exhibit A to its Reply in Support of Motion to Remove Improper AEO Designation of Richard Crow Deposition Transcript* (ECF No. 106) is **DENIED AS MOOT** and *Exhibit A* (ECF No. 108) is hereby **STRICKEN** from the record. In all, the following filings are hereby **STRICKEN** from the record: ECF Nos. 103, 107, 108, 109, 114.

Defendant is further **ORDERED** to take the requisite actions articulated in Paragraph 11 of the protective order for its violation of the protective order. Defendant must provide written certification to the Court that it has done so **no later than fourteen days after this Order is filed**.

Defense counsel is also **ORDERED** to pay for the reasonable attorneys' fees and costs Plaintiff incurred in filing its first motion to strike. Defense counsel is further **ORDERED** to pay for the reasonable attorneys' fees and costs associated with Plaintiff's second motion to strike but only as to the expenses incurred while drafting the arguments pertaining to Defendant's violation of the protective order.

30

If the parties cannot agree on reasonable costs and fees, Plaintiff must file a bill of costs within fourteen days of this Order. Defendant must respond to the bill of costs within fourteen days of service. No reply will be permitted.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2.

Date: February 10, 2026               s/Curtis Ivy, Jr.
                                      Curtis Ivy, Jr.
                                      United States Magistrate Judge